**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Sergio GARCIA, Defendant–Appellant.**

**No. 92–6280.**

United States Court of Appeals,
Tenth Circuit.

May 20, 1993.

1500

Thomas D. McCormick, Oklahoma City, OK, for defendant-appellant.

Joe Heaton, U.S. Atty., and Frank Michael Ringer, Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Before BALDOCK and BRORBY, Circuit Judges, and VRATIL, District Judge.*

BALDOCK, Circuit Judge.

Defendant Sergio Garcia appeals his conviction for conspiracy to distribute and possess with intent to distribute marijuana and cocaine, 21 U.S.C. § 846, and his guidelines sentence. Defendant contends that the evidence at trial was insufficient; the district court erred in admitting coconspirator hearsay, opinion evidence, and evidence of Defendant's alien status; the district court improperly determined the quantity of drugs in calculating his base offense level; and the district court improperly enhanced his sentence for obstruction of justice based on Defendant's trial testimony. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

I.

From June 12 until August 8, 1991, the government intercepted telephone calls to and from the A–Pro Burglar Bars in Oklahoma City, Oklahoma. During the course of this surveillance, the government gathered evidence that the owner of A–Pro Burglar Bars, Ignacio Escareno, was distributing marijuana and cocaine along with several other persons including Roman Escareno, Leonor Escareno, Ruben Venegas, Rosa Ines Escareno de Garcia, Robert Flowers, Alberto Ortiz, Lorenzo Garcia, and Ruben Delgado. Rosa Ines Escareno de Garcia is Ignacio Escareno's sister and Defendant's wife.

Defendant was charged along with the above-named persons above with conspiring to distribute and possess with intent to distribute marijuana and cocaine beginning on or about October 1990 and continuing until January 11, 1992. I R. doc. (indictment) at 1–2. The government's case in chief consisted of the testimony of two witnesses—Esequiel Gonzales, an informant, and Pete Ramirez, a FBI language specialist—and a stipulation by Defendant that all of his codefendants were members of the conspiracy as alleged in the indictment. I R. doc. 104 (stipulation).

* The Honorable Kathryn H. Vratil, District Judge, United States District Court, District of Kansas, sitting by designation.

Gonzales testified that on January 10–11, 1992, he spoke with Defendant while they were both in custody at Oklahoma County Jail. According to Gonzales, Defendant told him that he had sold marijuana "for his brother-in-law, [Ignacio], for some time but that they had a falling-out around June or July ... over some business and he no longer associated with him." II R. trans. at 27. Gonzales testified that Defendant told him that he was making $800 a pound as a result of the marijuana sales, and that he could sell Gonzales thirty or forty pounds. *Id.* at 36–37. Gonzales also testified that Defendant said that he took $15,000–30,000 of money from marijuana sales to Mexico. *Id.* at 27, 29.

FBI language specialist Ramirez translated ten telephone conversations involving co-conspirators which were admitted pursuant to Fed.R.Evid. 801(d)(2)(E) over Defendant's objection. Defendant was not a party to any of the telephone conversations. Ramirez also gave his opinion as to the meaning of certain phrases used during the course of the conversations. Four of the telephone calls intercepted by the government link Defendant to the drug conspiracy:[1]

(1) A July 17, 1991 call from Lorenzo Garcia to Ignacio Escareno in which Lorenzo asked Ignacio about "the halves," and Ignacio told Lorenzo to "put mine in, and Sergio's and everything, and we'll take care of it with a few ... [of] the ugly one." *Id.* at 123. Ramirez offered his opinion that the term "half" means half of a quantity of drugs, and "the ugly one" means old, deteriorating marijuana. *Id.* at 127–28.

(2) A July 22, 1991 call from Ignacio Escareno to Leonor Escareno in which Ignacio stated that Ines told him Sergio was worried about an investigation in which somebody had indicated that Sergio had brought a "load" for Ignacio. Ignacio also stated that Ines told him that Sergio was scared because "they were receiving another small hit, around [forty]." Ramirez offered his opinion that a "load" referred to marijuana, and a "small hit, around [forty]" referred to forty pounds of marijuana. *Id.* at 130–44.

(3) A July 23, 1991 call from Rosa Ines Escareno de Garcia to Ignacio Escareno in which Ines stated that "Sergio asked if ... they were going to give him the merchandise," and that "he wanted to be sure first so he wouldn't have to make the trip for nothing." Ines also stated that "[t]hey have to get it through the checkpoint for us." Ramirez offered his opinion that "merchandise" was drug related and the "checkpoint" referred to the border. *Id.* at 152–56.

(4) A July 23, 1991 call from Ignacio Escareno to Rosa Ines Escareno de Garcia in which Ignacio asked Ines about "your old man," and Ines indicated that he was with her. Ignacio told Ines to tell "them ... not to be moving anymore ... because [Ignacio] can't get them off [his] back." *Id.* at 156–59. Ramirez offered his opinion, over Defendant's objection, that "old man" referred to Ines' husband—*i.e.*, Defendant. *Id.* at 163–64.

Defendant's case consisted of a stipulation between the government and Defendant, testimony from five witnesses, and Defendant's testimony. The stipulation stated that the government searched Defendant's house and car on January 11, 1992, and found "no illegal drugs, drug paraphernalia, records, excessive currency, or the like that would indicate or tend to indicate that the Defendant was involved with any illegal drug activity." The stipulation further indicated that "a dog was brought to the scene to ascertain the presence of any odor or lingering odor of illegal drugs on or about the Defendant's home, automobile, and personal effects, and none were ascertained." Finally, the stipulation indicated that "no telephone calls where the Defendant was a party were intercepted." *Id.* at 193.

The five defense witnesses and Defendant testified that Defendant made three trips to Mexico from June to December 1991 during

---

1. Of the six remaining telephone calls admitted into evidence, two of the calls make no mention of anyone named "Sergio," *see* II R. Trans. at 116–18 (July 16, 1991 call); *id.* at 128–29 (July 22, 1991 call), and the other four calls, while mentioning the name "Sergio," do not link him to the then ongoing drug conspiracy. *See id.* at 106–07 (June 18, 1991 call); *id.* at 107–10 (July 15, 1991 call); *id.* at 145–52 (July 23, 1991 call); *id.* at 160–63 (August 8, 1993 call).

periods in which Defendant's father was seriously ill and eventually died. Defendant also submitted documentary evidence to show that his father was hospitalized on the dates of Defendant's trips to Mexico and died in December. The defense witnesses, all of whom were Defendant's relatives with varying degrees of contact with him, testified that they never saw Defendant in possession of any drugs, paraphernalia, or excessive amounts of currency. Two of the defense witnesses testified that they were familiar with Defendant's car, which he had driven to Mexico on each of the trips, and never noticed anything unusual about it such as secret compartments.

Defendant testified that he worked as a welder for his brother Ricardo, bought cars in the United States and sold them in Mexico, and worked as a musician. This testimony was corroborated by Ricardo. Defendant testified that he worked as a welder for Ignacio Escareno's burglar bar business from February to June 1991 but stopped working for Ignacio when they had a disagreement. Defendant testified that he obtained a cellular phone for Ignacio's business but that he never used it. Defendant admitted that he had heard rumors that Ignacio was involved in selling marijuana, but that he never participated in it.

## II.

■ In a drug conspiracy prosecution, the government must prove that two or more persons agreed to violate the law, the defendant knew the essential objectives of the conspiracy, and the defendant knowingly and voluntarily became a part of it. *United States v. Morehead*, 959 F.2d 1489, 1499 (10th Cir.1992). "A defendant's participation in a conspiracy is proven by evidence tending to show that the defendant shared a common purpose or design with his alleged coconspirators." *United States v. Horn*, 946 F.2d 738, 740 (10th Cir.1991) (citation omitted). However, mere association with persons known to be involved in criminal activity is insufficient to establish a person's participation in a criminal conspiracy. *Id.* at 741.

■ In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the government and determine whether any reasonable jury could find Defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In applying this standard, we recognize that "[c]redibility choices are resolved in favor of the jury's verdict. . . ." *Horn*, 946 F.2d at 741 (citations omitted). It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Nonetheless, "we cannot sustain a conspiracy conviction if the evidence does no more than create a suspicion of guilt or amounts to a conviction resulting from piling inference on top of inference." *Horn*, 946 F.2d at 741 (citations omitted).

■ Here, there is no question that two or more persons agreed to violate the law. Defendant stipulated that the nine codefendants were members of the conspiracy as charged in the indictment. Accordingly, our review is limited to determining whether there was sufficient evidence to establish that Defendant knew of and participated in the conspiracy. Although the evidence in this case is anything but overwhelming, we hold that it is sufficient such that a reasonable jury could find Defendant guilty beyond a reasonable doubt.

Gonzales testified that Defendant admitted selling marijuana for Ignacio Escareno and transported proceeds from such activity to Mexico. Gonzales' credibility is drawn into question given that his only contact with Defendant was while they were both incarcerated and his failure to provide any details surrounding the admission. Nevertheless, Gonzales' credibility is a matter properly left to the trier of fact. *Horn*, 946 F.2d at 741. While Defendant's admission to Gonzales does not in and of itself prove Defendant's participation in the conspiracy because Defendant never admitted when he sold marijuana for Ignacio Escareno or when he took proceeds from marijuana sales to Mexico, when the admission is viewed in light of the coconspirators' statements, there is sufficient

evidence to connect Defendant to the conspiracy to distribute marijuana.

The coconspirator statements clearly connect a person named "Sergio" to the conspiracy. While Defendant is not specifically identified as the "Sergio" to whom the conspirators referred, in light of Defendant's admission to Gonzales and the fact that one of the incriminating references to "Sergio" was by Defendant's own wife, it was reasonable for the jury to infer that the "Sergio" referred to by the coconspirators was Defendant. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 (it is "the responsibility of the trier of fact ... to draw reasonable inferences from the basic facts to ultimate facts"). This inference is supported by the July 23 statement by Ignacio Escareno to Defendant's wife in which Ignacio asked her about her "old man," whom Ramirez identifies as being Defendant, and tells her to tell "them ... not to be moving anymore ... because [Ignacio] can't get them off [his] back." *Id.* at 156–59. Accordingly, the evidence is sufficient to sustain Defendant's conviction.

### III.

The district court admitted, over Defendant's hearsay objection, Ramirez's testimony which translated ten intercepted telephone calls between coconspirators. On appeal, Defendant contends that the statements were improperly admitted under Fed.R.Evid. 801(d)(2)(E) and that the admission of the statements violated his Sixth Amendment right to confrontation.

### A.

■ Statements by coconspirators made during the course of and in furtherance of the conspiracy are considered nonhearsay and therefore admissible. Fed.R.Evid. 801(d)(2)(E). Before admitting such statements, the district court must be satisfied that "there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course of and in furtherance of the conspiracy.'" *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). The district court may consider the coconspirator statements themselves as well as independent evidence in making this preliminary factual determination. *Id.* at 181, 107 S.Ct. at 2781. The offering party must prove these preliminary facts by a preponderance of the evidence. *Id.* at 176, 107 S.Ct. at 2779.

Prior to admitting Ramirez's testimony, the district court made the requisite findings based on the coconspirator statements and Gonzales' testimony. *See* III R. trans. at 95–97. Defendant argues that the district court's finding that he was a member of the conspiracy at the time of the statements was clearly erroneous. *See United States v. Caro*, 965 F.2d 1548, 1557 (10th Cir.1992) (preliminary fact findings for admission of evidence under Rule 801(d)(2)(E) reviewed under clearly erroneous standard). All of the coconspirator statements were made during the conspiracy as alleged in the indictment. Moreover, all of the statements concern what can reasonably inferred to be drug transactions and, therefore, were made in furtherance of the conspiracy. The same facts that we have already determined were sufficient beyond a reasonable doubt to prove Defendant was a member of the conspiracy were offered to show Defendant's participation in the conspiracy as a predicate to admitting the coconspirator statements. Accordingly, we cannot say that the district court's findings that Defendant was a member of the conspiracy at the time that the coconspirator statements were made was clearly erroneous.

### B.

■ Defendant also contends that his Sixth Amendment right to confrontation was violated by admission of the coconspirator statements. Defendant did not raise a specific objection based on the confrontation clause at trial. Thus, we review for plain error. *See United States v. Perez*, 989 F.2d 1574, 1582 (10th Cir.1993) (en banc). "To constitute plain error under the Confrontation Clause, the *constitutional* error must be (1) obvious, and (2) 'affect[ ] substantial rights.'" *Id.* at 1583 (quoting Fed.R.Crim.P. 52(b)).

■ "The Confrontation Clause is not violated if the hearsay statement 'falls within a

firmly rooted hearsay exception.' " *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir.1991) (quoting *Idaho v. Wright*, 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990)). Statements by coconspirators made during the course of and in furtherance of the conspiracy is a "firmly rooted hearsay exception." *Bourjaily*, 483 U.S. at 183, 107 S.Ct. at 2782. Thus, under the present state of the law, Defendant's Sixth Amendment right to confrontation was not violated by the proper admission of the coconspirator statements pursuant to Fed.R.Evid. 801(d)(2)(E).

Nevertheless, Defendant challenges the constitutionality of the present state of the law by arguing that Fed.R.Evid. 801(d)(2)(E), as it has been interpreted by the Supreme Court, constitutes impermissible legislative action in violation of Article V of the Constitution. Essentially, Defendant argues that the current state of the law permits convictions based solely on coconspirator statements, thereby eliminating a criminal defendant's right to confrontation as provided by the Sixth Amendment. Defendant argues that such a result could only be constitutionally achieved through the amendment and ratification process of Article V. *See Ullmann v. United States*, 350 U.S. 422, 428, 76 S.Ct. 497, 501, 100 L.Ed. 511 (1956) (nothing can be taken out of the Constitution except through the amendatory process).

▪ The Supreme Court has clearly rejected as "unintended and too extreme" the view that the Confrontation Clause prohibits the admission of out of court statements as evidence against criminal defendants. *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). "[C]ompeting interests, if closely examined, may warrant dispensing with confrontation at trial." *Id.* at 64, 100 S.Ct. at 2538 (quotations omitted). Thus, the Supreme Court's view of the Confrontation Clause appears to be far less deferential to the rights of criminal defendants than that argued for by Defendant. In light of the Supreme Court's pronouncements on the Confrontation Clause, it is not "obvious" that Fed.R.Evid. 801(d)(2)(E) unconstitutionally amended the Sixth Amendment in violation of Article V. Accordingly, we find no plain error.

## IV.

During Ramirez's testimony translating the second July 23 conversation between Ignacio Escareno and Rosa Ines Escareno de Garcia, Ramirez offered his opinion, over Defendant's objection, that Ignacio's reference to "your old man" was to Defendant. Defendant contends that this was improper opinion evidence. We review for an abuse of discretion. *United States v. Stanley*, 896 F.2d 450, 452 (10th Cir.1990).

▪ We agree that Ramirez's opinion that "your old man" referred to Defendant was not the proper subject of expert testimony, and therefore was not admissible under Fed.R.Evid. 702. Unlike Ramirez's opinion as to jargon used in the drug trade which may be explained by expert opinion testimony, *see, e.g., United States v. Nersesian*, 824 F.2d 1294, 1307–09 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987), no specialized knowledge is necessary to understand the phrase "your old man." Therefore, expert testimony on this point was unnecessary.

▪ However, opinion testimony is not limited to experts. Testimony by a lay witness, in the form of opinions or inferences, is admissible if the opinions or inferences are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed.R.Evid. 701. A district court has "broad discretion to determine whether a lay witness is qualified under Rule 701 to testify on a matter of opinion." *United States v. Borrelli*, 621 F.2d 1092, 1095 (10th Cir.), *cert. denied*, 449 U.S. 956, 101 S.Ct. 365, 66 L.Ed.2d 222 (1980).

▪ In order for a lay opinion to be "rationally based on the perception of the witness," the witness must have "first hand knowledge" of the events to which he is testifying. *United States v. Hoffner*, 777 F.2d 1423, 1425 (10th Cir.1985). This requirement, which is derived from Fed. R.Evid. 602, permits a witness to testify to what he heard "unless what he heard is excluded under the hearsay rules...." [3]

Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence*, ¶ 602[01], at 602–4 (1992). Thus, contrary to Defendant's suggestion, the first hand knowledge requirement may be based on the lay witness' perception of otherwise admissible out of court statements. *See Stanley*, 896 F.2d at 452 (lay witness' opinion as to age of persons depicted in photographs met first hand knowledge requirement because witness viewed photographs while testifying).

■ Ramirez's opinion was based on listening to the conversations between coconspirators which were admissible out of court statements under Fed.R.Evid. 801(d)(2)(e). Therefore, Ramirez's opinion that Ignacio Escareno's reference to "your old man" was a reference to Defendant met the first hand knowledge requirement of Fed.R.Evid. 701. Furthermore, Ramirez's opinion has a rational connection to the basis for the opinion because Ignacio Escareno was talking to Defendant's wife. Thus, Ramirez's opinion meets the first requirement for the admission of lay opinion testimony.

Rule 701 also requires lay opinion testimony to be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Ramirez's opinion that "your old man" referred to Defendant was helpful to whether Defendant participated in the conspiracy given that the conversation was incriminating. Accordingly, we cannot say that the district court abused its "broad discretion" in permitting Ramirez to give his opinion that the reference to "old man" referred to Defendant.

### V.

Over Defendant's relevancy objection, the prosecutor cross-examined Defendant concerning his immigration status. Specifically, the prosecutor elicited from Defendant his belief that he would be deported if convicted but could remain in this country if acquitted. According to the government, such evidence is relevant to impeach Defendant's credibility by showing that he had a motive to lie. Defendant argues on appeal that the minimal probative value of this evidence was substantially outweighed by its prejudicial impact. *See* Fed.R.Evid. 403. Because Defendant

did not make a specific Rule 403 objection at trial, we review only for plain error. *United States v. Barbee*, 968 F.2d 1026, 1031 (10th Cir.1992).

Relying on *United States v. Doe*, 903 F.2d 16 (D.C.Cir.1990), Defendant contends that the prosecutor's questioning drew the jury's attention to Defendant's Mexican ancestry, thereby creating the risk of ethnic bias in the jury's decision, and this constitutes plain error. In *Doe*, the court reversed the defendants' convictions, expressing concern about the risk of racial and ethnic bias created by the "expert" testimony of a government agent. The agent testified extensively as to how "the Jamaicans" had taken over the cocaine and crack trade in Washington D.C., and two of the three defendants were of Jamaican ancestry. In the present case, the prosecutor's question concerning Defendant's knowledge of his deportation if convicted is not analogous to the government's tactics in *Doe*.

■ Defendant's knowledge that he would be deported if convicted is relevant to impeach Defendant's credibility. *See* Fed. R.Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Just as a defendant who knows he is going to prison is convicted, a defendant who knows he will be deported if convicted has a reason to testify falsely. Our plain error review allows us to reverse a conviction only for particularly egregious errors which are obvious and substantial. *United States v. Saucedo*, 950 F.2d 1508, 1511 (10th Cir.1991). The fact that we may be able to discern a potential prejudicial impact of the evidence in hindsight, does not mean that it was obvious to the district court that the evidence should be excluded under Fed.R.Evid. 403. Given that the government asserted a basis for the relevancy of Defendant's knowledge that he would be deported if convicted, albeit a minimal one, we cannot say that the admission of the evidence rises to the level of plain error.

**1508**

## VI.

■ Defendant contends that the district court erred in determining the quantity of drugs for his base offense level calculation. The district court adopted the recommendation of the second revised presentence report which stated that "[t]he government has evidence which shows the defendant was involved in a conspiracy to distribute 160 pounds (72.72 kilo[grams]) of marijuana." VI R. doc. ¶ 23. At the sentencing hearing, it was discerned that the evidence supporting this quantity was the July 22, 1992 conversation between Ignacio Escareno and Leonor Escareno, in which Ignacio indicates that Sergio and Ines were to receive forty pounds of marijuana, and the July 16, 1992 conversation between Rosa Ines Escareno de Garcia and Ignacio Escareno regarding two shipments of marijuana by car from Mexico. Although the government had absolutely no evidence as to the size of either of the shipments referred to in the July 16 conversation, an FBI agent testified at the sentencing hearing that "having worked this case and many, many before this, ... and here knowing what the loads are that come from El Paso to Oklahoma City, they average between [sixty] and a hundred pounds, and we went with the low end...." V R. trans. at 57.

On appeal, Defendant does not contest that the forty pounds can be included in the base offense level calculation; however, Defendant argues that the evidence supporting the inclusion of an additional 120 pounds is insufficient to meet the government's burden. Specifically, Defendant takes issue with the district court's reliance on the FBI agent's estimate of the size of an average shipment of marijuana, claiming that the information underlying this estimate does not possess the required minimum indicia of reliability. "We review this determination under a clearly erroneous standard, and will not disturb it unless it has no support in the record or, after reviewing all the evidence, we are firmly convinced that an error has been made." *United States v. Bernaugh,* 969 F.2d 858, 864 (10th Cir.1992) (citation omitted).

■■ The government has the burden of proving the quantity of drugs for sentencing purposes by a preponderance of the evidence. *United States v. Reyes,* 979 F.2d 1406, 1410 (10th Cir.1992). In determining the quantity of drugs for the base offense level calculation, Defendant is responsible for "all quantities ... with which he was directly involved, and ... all reasonably foreseeable quantities ... that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, comment. (n. 2) (Nov. 1992). The government did not seize any drugs; therefore, the district court was required to "approximate the quantity." U.S.S.G. § 2D1.1, comment. (n. 12) (Nov. 1992). While the court may rely on a government estimate in approximating the quantity of drugs, *see, e.g., United States v. Sturmoski,* 971 F.2d 452, 462 (10th Cir.1992), the information underlying the estimate must possess "a minimum indicia of trustworthiness." *United States v. Cook,* 949 F.2d 289, 296 (10th Cir.1991) (citation omitted). *See also* U.S.S.G. § 6A1.3(a) (information relied on by court at sentencing must have "sufficient indicia of reliability to support its probable accuracy").

We have allowed quantity determinations for base offense level calculations to be based on estimates under a variety of circumstances. *See, e.g., Sturmoski,* 971 F.2d at 462 (estimate based on amount of precursor chemicals seized); *Cook,* 949 F.2d at 295–96 (estimate based on witnesses testimony that defendant sold specified dollar amount of drugs over specified time period); *United States v. Short,* 947 F.2d 1445, 1456–57 (10th Cir.1991) (estimate based on the characteristics of drug laboratory), *cert. denied,* — U.S. —, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992); *United States v. Shewmaker,* 936 F.2d 1124, 1130 (10th Cir.1991) (estimate based on aerial observation of marijuana field), *cert. denied,* — U.S. —, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *United States v. Harris,* 903 F.2d 770, 778 (10th Cir.1990) (estimate based on defendant's business records). In all of these cases, the estimates had some basis of support in the facts of the particular case.

In *United States v. Hewitt,* 942 F.2d 1270 (8th Cir.1991), the defendant admitted to transporting 112 grams of cocaine on two

trips. A codefendant informed the government that the defendant had also made six other trips to deliver cocaine. The government assumed that the defendant transported the same amount of cocaine on these six other trips, and the district court calculated the defendant's base offense level accordingly. The Eighth Circuit reversed, find the government's assumption to be "far reaching" and insufficient to establish the amount of drugs. *Id.* at 1274.

In the present case, the government's assumption as to the quantity of drugs is even more far reaching than that found to be insufficient in *Hewitt*. The FBI agent's testimony that shipments of marijuana from Mexico to Oklahoma City averaged between sixty and 100 pounds is not based on any evidence particular to this case. The government has pointed to nothing in the record showing that the coconspirators ever discussed the size of the shipments in any of the intercepted telephone calls and no drugs were ever observed, much less seized, in this investigation. Rather, the estimate was based on the agent's cumulative experience investigating drug trafficking. While we do not doubt the agent's veracity in this regard, the average size shipment of all marijuana traffickers is simply not evidence of the size of these particular shipments of marijuana. To find that these particular shipments were of average size is nothing more than a guess and clearly insufficient to carry the government's burden. *See United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir.1990) ("Evidence which does not preponderate or is in equipoise simply fails to meet the required burden of proof."). Accordingly, the district court's finding that Defendant was involved in a conspiracy to distribute 160 pounds of marijuana is clearly erroneous.

## VII.

Finally, Defendant contends that the district court erred by including a two level upward adjustment to his offense level calculation for obstruction of justice, *see* U.S.S.G. § 3C1.1 (Nov. 1992), based on his testimony at trial denying his participation in the conspiracy. The district court found that Defendant's "absolute denial of guilt, with exculpatory explanations for things . . . cannot be reconciled with the verdict." V R. trans. at 63. The district court also noted that it was not basing its decision solely on the jury's verdict, but also on its own assessment that the verdict was correct and Defendant's testimony was false. *Id.* at 64. We review for clear error. *United States v. Litchfield,* 959 F.2d 1514, 1523 (10th Cir.1992).

A § 3C1.1 "enhancement is justified where a defendant . . . testifies falsely." *United States v. Morgan,* 936 F.2d 1561, 1574 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). In order to impose an obstruction of justice enhancement based on a defendant's testimony at trial, "a district court must review the evidence and make independent findings" that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *United States v. Dunnigan,* —— U.S. ——, —— – ——, 113 S.Ct. 1111, 1116–17, 122 L.Ed.2d 445 (1993). Here, the district court specifically found, based on its own independent assessment of the evidence, that Defendant committed perjury when he denied his involvement in the conspiracy. There is no question that this is a material matter which Defendant is not likely to have been confused, mistaken, or have forgotten about. Although, as we said earlier, the evidence to the contrary is not overwhelming, we cannot say that the district court's finding that Defendant committed perjury at trial is clearly erroneous. *See Morgan,* 936 F.2d at 1574–75; *United States v. Keys,* 899 F.2d 983, 988–89 (10th Cir.), *cert. denied,* 498 U.S. 858, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990).

## VIII.

Defendant's conviction is AFFIRMED. Defendant's sentence is REVERSED and the case is REMANDED to the district court with instructions to VACATE Defendant's sentence and resentence him consistent with this opinion.