85 F.3d 641
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Arturo BRAZIER, a/k/a Arturo Gooding, Defendant-Appellant.
 No. 94-3303.
 D.C. No. 93-40003-08.
 United States Court of Appeals, Tenth Circuit.
 May 1, 1996.
 
 Before EBEL, LOGAN, and BRISCOE, Circuit Judges.
 ORDER AND JUDGMENT*
 EBEL, Circuit Judge.
 
 
 1
 During the course of an investigation into illegal drug activity in New Orleans, Louisiana, law enforcement officials became aware of possible drug trafficking activity between New Orleans and Junction City, Kansas. United States Customs agents discovered that numerous phone calls were placed by drug operatives in New Orleans to a Days Inn Motel in Junction City. The room at the motel receiving the calls was rented for a two-week period by Marcos and Eva Torres (hereinafter Marcos Torres will be referred to as "Torres"), two of Appellant Arturo Brazier's ("Brazier") named coconspirators.
 
 
 2
 Law enforcement officials believed Torres was running a cocaine distribution operation which involved the importation of cocaine from Panama to Junction City, Kansas. They further believed that Torres was receiving cocaine from New York via Brazier for distribution in Junction City.
 
 
 3
 On November 17, 1992, Brazier was arrested on charges filed in the United States District Court for the Eastern District of New York. On January 28, 1993, Brazier was named in three counts of an eleven-count indictment filed in the United States District Court for the District of Kansas, Topeka Division. With respect to the three Kansas counts, Brazier was charged as follows: (1) Conspiracy to possess with intent to distribute in excess of 5 kilograms of cocaine and/or in excess of 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; (2) Possession with intent to distribute approximately one kilogram of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and 18 U.S.C. § 2; and (3) Use of a communication facility (telephone) to facilitate the possession with intent to distribute cocaine, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. On December 13, 1993, a jury found Brazier guilty of all three counts.[1]
 
 
 4
 Evidence presented at trial demonstrated that from December of 1991 to June of 1992, Torres had regular telephone contact with telephone numbers associated with Brazier. Further evidence was presented to show that, during this same period, Brazier was a supplier of cocaine from New York to Torres' distribution operation in Junction City. The evidence at trial primarily revolved around two alleged instances of conduct: (1) Brazier transported 250 grams of cocaine powder and 250 grams of cocaine base to Torres in January of 1992, by means of Ricardo Gooding ("Gooding"); and (2) Brazier transported 1 kilogram of cocaine powder to Torres in June of 1992, by means of Lisa Ponder ("Ponder").
 
 
 5
 After Brazier's conviction, the probation officer prepared and submitted a Presentence Investigation Report (PSI) pertaining to Brazier. The total amount of cocaine attributed to Brazier as a result of his participation in the conspiracy was 1.25 kilograms of powder cocaine and 250 grams of cocaine base. Based on these amounts, Brazier's base offense level was calculated to be 34. The PSI recommended a two-point enhancement for Brazier's role in the offense. The resulting offense level of 36, coupled with Brazier's Criminal History Category of I, resulted in a sentencing range of 188-235 months. Over Brazier's objections, the district court imposed a sentence of 188 months for counts I and II, and 48 months as to count III, all to run concurrently, and five years of supervised release following the period of incarceration.
 
 
 6
 Brazier now appeals his conviction and sentence arguing: (1) insufficient evidence was presented at trial to establish that he participated in any conspiracy; (2) venue in the District Court of Kansas was improper as to count II; (3) the district court abused its discretion by admitting irrelevant evidence that was more prejudicial than probative; (4) the district court's factual findings resulting in a base offense level of 34 were clearly erroneous; and (5) the finding that Brazier's conduct in the charged offense warranted an enhancement was clearly erroneous. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), and for the reasons discussed below, we AFFIRM Brazier's conviction and sentence.
 
 DISCUSSION
 I. SUFFICIENCY OF THE EVIDENCE
 
 7
 When considering a challenge to the sufficiency of the evidence, we review the record de novo. United States v. Urena, 27 F.3d 1487, 1489 (10th Cir.), cert. denied, 115 S.Ct. 455 (1994). We review all of the evidence, both direct and circumstantial, in the light most favorable to the government to determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt. Id.
 
 A.
 
 8
 Brazier first argues that the evidence presented at trial was insufficient to allow a conviction for conspiring to possess with the intent to distribute cocaine or crack. The government had to prove the following in order to prevail on its conspiracy charge: (1) that Brazier agreed to violate the law; (2) that Brazier knew the essential objectives of the conspiracy; (3) that Brazier knowingly and voluntarily became involved in the conspiracy; and (4) that the coconspirators were interdependent. United States v. Riggins, 15 F.3d 992, 994 (10th Cir.1994). "The essence of a drug distribution conspiracy is an agreement between two or more persons to traffic in controlled substances." United States v. Horn, 946 F.2d 738, 740 (10th Cir.1991). The government's theory is that, beginning in December of 1991, Brazier began supplying Torres with cocaine that Torres was to distribute in the Junction City, Kansas, area. After review of the record, we hold that this theory is supported by the evidence presented at trial.
 
 
 9
 From December of 1991 until June of 1992 there were frequent telephone calls made from telephone numbers associated with Torres and telephone and beeper numbers associated with Brazier. A large concentration of these calls occurred in relation to a shipment of cocaine from Brazier to Torres on January 8, 1992. Anthony Felix ("Felix") testified that he was involved in this shipment of crack and powder cocaine which was ultimately delivered to 630 Golden Belt in Junction City, an apartment used by Torres as a drug distribution point.
 
 
 10
 Felix testified that he picked up Ricardo Gooding ("Gooding"), Brazier's nephew, from a Travel Lodge Motel in Kansas City, Missouri, and transported him to 630 Golden Belt in Junction City. When they arrived at 630 Golden Belt, Gooding went into a bedroom with Torres, Alcides Plato and Gooding's luggage. Torres subsequently emerged with what Felix estimated to be 250 grams of crack and 250 grams of powder cocaine.[2] Felix also indicated that he had spoken on the phone 3-4 times with an individual named "Arturo." Felix's overall testimony regarding these events on January 8th was corroborated by telephone records. During Gooding's stay at the Travel Lodge, telephone records reflect that calls were made (1) from a telephone number in New York assigned to Stephanie Brazier (Brazier's wife) to the number at 630 Golden Belt; (2) from Gooding's room at the Lodge to Stepanie Brazier's number in New York; (3) from Gooding's room at the Lodge to the number at 630 Golden Belt; and (4) from 630 Golden belt to a New York beeper number associated with Brazier.[3]
 
 
 11
 The government's theory was further supported at trial by the testimony of Lisa Ponder ("Ponder"). Ponder identified Brazier as the person who supplied her with approximately one kilogram of cocaine, while she was in New York, for delivery to Torres in Junction City. Torres had recruited Ponder to travel to New York with a large amount of money in order to pick up the one kilogram of cocaine. He also made arrangements for Brazier to pick Ponder up at the airport in New York. When Ponder arrived, Brazier took her to the Oasis Motel in Brooklyn, and prior to checking her in with a credit card,[4] he telephoned Torres from the pay phone in the Motel lobby to let him know Ponder had arrived safely. Ponder testified that she also spoke with Torres during that call. The next day, after Ponder gave Brazier the money, Ponder and Brazier packed one kilogram of cocaine into a girdle worn by Ponder, and Ponder returned to Junction City.[5]
 
 
 12
 All of this evidence tends to show that Brazier was an active participant with others, namely Torres, in trafficking cocaine from New York to Junction City, Kansas. Furthermore, Brazier concedes that "[t]he evidence might be sufficient to show that the two (Brazier and Torres) conspired to bring 1 kilogram of cocaine into the state of Kansas." Br. of Appellant at 10. He nonetheless argues that because he was never present in Junction City he cannot be liable for the distribution of cocaine there. This argument is without merit. The evidence shows that the scope of the conspiracy went beyond the boundaries of the state of Kansas, and that overt acts were committed by Brazier in New York in the furtherance of the conspiracy to distribute cocaine in Junction City.
 
 B.
 
 13
 Brazier next argues the evidence presented at trial was insufficient to prove him guilty of Count II of the indictment. Count II charged him with possession with the intent to distribute, or aiding and abetting in the possession with the intent to distribute, approximately 1 kilogram of cocaine. In order for the government to prove Brazier's guilt as an aider and abettor, the government must show that: (1) Brazier associated himself with a criminal venture; (2) he participated in the venture as something he wished to bring about; (3) he sought by his actions to make the venture succeed; and (4) the evidence establishes the commission of the offense by someone as well as the aiding and abetting by Brazier. United States v. Yost, 24 F.3d 99, 104 (10th Cir.1994). Participation as an aider and abettor may be established by circumstantial evidence. United States v. Esparsen, 930 F.2d 1461, 1470 (10th Cir.1991), cert. denied, 502 U.S. 1036 (1992).
 
 
 14
 The eyewitness testimony of Ponder indicating that Brazier supplied her with one kilogram of cocaine for transport back to Junction City, along with the other evidence presented at trial stemming from this transaction, shows that Brazier did in fact aid and abet the possession of one kilogram of cocaine in Junction City, Kansas. The evidence further shows that the substance received by Ponder was in fact cocaine. The government need not present scientific evidence to "prove the identity of a substance." United States v. Sanchez DeFundora, 893 F.2d 1173, 1175 (10th Cir.), cert. denied, 495 U.S. 939 (1990). "As long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal." Id. Ponder's description of the packages, the high price that was paid for the packages, and the fact that the transaction was carried on in secret all circumstantially show that the substance received by Ponder was indeed cocaine. See id. (noting as relevant to determining identity of substance evidence regarding the appearance of the substance involved in the transaction, a high price paid in cash for the substance, and evidence that transactions involving the substance were carried on with secrecy).
 
 C.
 
 15
 Finally, Brazier argues that no evidence was presented at trial which could establish that he used the telephone in facilitating a drug transaction, as alleged in Count III of the indictment. We disagree. Evidence was presented at trial which showed that Brazier used the telephone at the Oasis Motel in Brooklyn, New York, to make a collect call informing Torres that Ponder had arrived safely. Furthermore, Ponder testified that Brazier made the call and then she spoke to Torres herself. The evidence clearly suggests that this telephone call was made in order to facilitate the drug transaction between Torres and Brazier.
 
 II. VENUE IN KANSAS AS TO COUNT II
 
 16
 Brazier argues that count II of the indictment should be dismissed because venue in the state of Kansas was improper. Brazier, however, failed to raise this issue before, during or immediately after the trial in this case. The issue is therefore waived for the purposes of appeal. United States v. Jackson, 482 F.2d 1167, 1179 (10th Cir.1973), cert. denied, 414 U.S. 1159 (1974). We do note, however, that since Brazier was charged with aiding and abetting a crime which took place in Kansas, venue was proper in Kansas. Id. ("Congress has declared that an aider and abettor may be punished as a principal, and hence he may be punished in the same district as the principal.").
 
 III. EVIDENTIARY RULINGS
 
 17
 Brazier argues that the district court improperly admitted evidence of cocaine and crack sales at 630 Golden Belt in Junction City. The contested evidence related to five controlled purchases which occurred at the apartment in early March of 1992. Brazier contends that these purchases were not relevant to the charges against him. The district court's decision to admit this evidence is reviewed on appeal for an abuse of discretion. United States v. Harmon, 918 F.2d 115, 117 (10th Cir.1990).
 
 
 18
 The sales of cocaine and crack from 630 Golden Belt in March of 1992 provide circumstantial evidence of the conspiracy between Brazier and Torres. Felix testified that before Gooding delivered the January 8th, 1992 shipment of cocaine to 630 Golden Belt, no sales of crack had taken place out of that location. After Gooding's arrival, however, crack was sold on a regular basis. The fact that crack and cocaine were sold from that address shortly after Brazier allegedly delivered the same to that address through Gooding is circumstantial evidence that Brazier was Torres' supplier. The sales of cocaine from 630 Golden Belt also showed the interdependence of the coconspirators. Torres was the local distributor in Junction City and Brazier provided the cocaine. Thus, we cannot say that the probative value of this evidence was substantially outweighed by its prejudicial effect. We therefore hold that the district court did not abuse its discretion in admitting the evidence.
 
 IV. BASE OFFENSE LEVEL
 
 19
 Brazier's base offense level was determined to be 34. This level was calculated based on 250 grams of crack cocaine and 1.25 kilograms of powder cocaine attributed to Brazier. The 250 grams of crack was that 250 grams delivered to Torres in January of 1992. The 1.25 kilograms of powder cocaine was the sum of the 1 kilogram obtained by Ponder and the 250 grams delivered to Torres by Gooding in January, 1992. Brazier argues that the evidence was insufficient to show he was responsible for all of the crack and cocaine attributed to him for sentencing purposes.
 
 
 20
 The government has the burden of proving, by a preponderance of the evidence, the quantity of drugs for sentencing purposes. United States v. Garcia, 994 F.2d 1499, 1508 (10th Cir.1993). The defendant is responsible for any quantities with which he was directly involved, as well as all reasonably foreseeable quantities that were within the scope of his criminal activity. Id. Quantity determinations for base offense level calculations may be based on estimates, so long as the estimate is supported by a minimum indicia of reliability. Id. Finally, we accept the district court's findings of fact unless they are clearly erroneous. United States v. Powell, 982 F.2d 1422, 1435 (10th Cir.1992), cert. denied, 508 U.S. 917 (1993).
 
 
 21
 The finding that Ponder transported approximately one kilogram of cocaine powder to Junction City for Brazier was not clearly erroneous. Ponder indicated that she was given a large sum of money (indicated in the presentence report to be $21,000) to pay for Brazier's cocaine. In addition, Agent Jim Kanatzar testified, based on Ponder's description of the packages and his experience, that the packages purchased by Ponder in New York contained at least a kilogram of cocaine.
 
 
 22
 The district court's findings with regard to the 250 grams of crack and 250 grams of powder cocaine delivered to Torres by Gooding were likewise not clearly erroneous. Felix testified at trial that after Gooding's visit to 630 Golden Belt, he saw approximately 250 grams of crack and 250 grams of powder cocaine in the apartment. He also testified that he had a lot of experience weighing cocaine and was very familiar with its appearance, as well as the appearance of crack. Finally, the government introduced at the sentencing hearing a statement from Brazier himself wherein he admitted that he supplied Torres with 500 grams of crack.[6]
 
 
 23
 V. SENTENCE ENHANCEMENT FOR ROLE IN THE OFFENSE
 
 
 24
 United States Sentencing Guideline § 3B1.1 (c) provides a two level enhancement for an offender who is determined to be an "organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)...." Some of the factors to be considered in applying § 3B1.1 (c) are: the defendant's exercise of decision making, the recruitment of accomplices, the degree of participation in the planning or organizing of the crime, and the degree of control defendant exercised over others. U.S.S.G. § 3B1.1 Application Note 4. Brazier challenges the district court's application of U.S.S.G § 3B1.1 (c) to his sentence. We review the district court's findings on this issue for clear error. United States v. Bernaugh, 969 F.2d 858, 862 (10th Cir.1992).
 
 
 25
 The facts in this case show that Brazier was an organizer with respect to the activities in New York. He was responsible for Ponder while she was there. He saw that she got back and forth from the airport, provided accommodations for her, and checked in with Torres when she arrived. Brazier also recruited accomplices in the form of his nephew, Gooding. Based on these facts, the district court's decision to enhance Brazier's sentence by two points pursuant to U.S.S.G. § 3B1.1 (c) was not clearly erroneous.
 
 CONCLUSION
 
 26
 For the reasons stated above, we AFFIRM Brazier's conviction and sentence.
 
 
 
 *
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.6
 
 
 [1]
 Brazier had already plead guilty on May 20, 1993, in the Eastern District of New York to one count of possession with intent to distribute in excess of 500 grams of cocaine
 
 
 [2]
 Felix's estimate of the weight was based on the appearance of the packages and his experience in prior cocaine transactions
 
 
 [3]
 This cocaine distribution operation involving Gooding, Brazier and Torres was further proved at trial through evidence seized from Torres' house. A search of Torres' house produced (1) two money orders, in the amount of $400 each, which were sent from Junction City to Gooding in Stone Mountain, Georgia, in February of 1992; and (2) a piece of paper containing the writing "Arturo" and two telephone numbers, one of which appeared numerous times in Torres' phone records
 
 
 [4]
 Credit card records reflect that an "Arturo Gooding" used the card to pay for the room that day
 
 
 [5]
 Ponder described one package as being approximately 12 inches long, 6 inches wide and 1 inch thick. Another package was described as being 4 inches by 6 inches, and 1 inch wide. She estimated the weight to be "[a] pound or two." Finally, Ponder testified that the packages appeared to contain cocaine, and that she was familiar with the appearance of cocaine because she had seen it at least 50 times. Agent Kanatzar testified from that physical description that the cocaine would amount to at least one kilogram
 
 
 [6]
 This statement was not offered into evidence at trial. It was given on August 13, 1993, to DEA agents in New York as part of a debriefing agreement between Brazier and the United States Attorney's Office for the Eastern District of New York. The government used the statement at sentencing to rebut Brazier's allegation that his prosecution was based on lies