**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 1 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

    v.

EDWARD DEAN DUNCAN aka Dean
Duncan,

            Defendant - Appellant.

No. 96-7015

(E.D. Oklahoma)

(D.C. No. CR-94-20-S)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **HOLLOWAY**, and **ANDERSON**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Edward Dean Duncan pleaded guilty to one count of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1), and one count of possession with the intent to

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

distribute marijuana in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Duncan to two concurrent terms of sixty months' imprisonment followed by two concurrent terms of five years' supervised release, and a $100.00 special assessment. Duncan appeals that sentence, alleging that the district court miscalculated the quantity of drugs for which he should be held accountable under the Sentencing Guidelines. We affirm.

## I.

Prior to his incarceration, Duncan resided in Choctaw County, Oklahoma. Between 1992 and 1994, law enforcement officers searched Duncan's home and property on six different occasions, each time discovering and seizing evidence that Duncan was manufacturing and distributing illegal drugs. As a result of the searches, the officers seized a total of 477.84 grams of methamphetamine, 9.36 kilograms of marijuana, $827,000 in United States currency, assorted firearms, and miscellaneous drug paraphernalia.

The issue in this appeal is whether the seized drugs and currency were properly quantified for purposes of determining Duncan's sentence. Under the Guidelines, the offense level for a drug-related crime is determined largely by the quantity of drugs involved. See U.S.S.G. §2D1.1. When more than one type of drug is involved, all drug types are converted to a single drug type using the Guidelines' Drug Equivalency Tables.

Id., comment. (n. 10). Furthermore, if the amount of drugs seized does not adequately reflect the scale of the offense, the Guidelines direct the district court to approximate the total amount of drugs actually involved by considering such factors as the price generally obtained for the controlled substance, the defendant's financial or other records, and the size or capability of any drug laboratory involved. Id., comment. (n. 12). Thus, if seized currency is attributed to drug sales, the currency may be converted to its drug equivalent and aggregated with the amount of drugs actually seized. The total drug weight is then used to fix the base offense level.

In this case, a United States probation officer prepared a presentence report attempting the necessary conversions and calculations. First, the officer determined that any methamphetamine attributable to Duncan's conduct would be converted to its marijuana equivalent. Using the Guidelines' Drug Equivalency Tables, the officer converted the 477.84 grams of seized methamphetamine to 477.84 kilograms of marijuana. He added this 477.84 kilograms to the 9.36 kilograms of seized marijuana for a total of 487.2 kilograms of seized marijuana.

Next, the officer determined that the entire $827,000 currency was attributable to Duncan's drug trade. Reasoning that Duncan's trade involved both methamphetamine and marijuana, the officer divided the $827,000 equally between methamphetamine and marijuana. The officer then used the average retail prices of marijuana ($3,500 per kilogram) and methamphetamine ($25,000 per kilogram) to convert the cash to its drug

equivalents. Thus, $413,000 converted to 118 kilograms of marijuana, and the other $413,000 converted to 16.52 kilograms of methamphetamine. The officer converted this 16.52 kilograms of methamphetamine to 16,520 kilograms of marijuana and added it to the 118 kilograms of marijuana for an aggregate of 16,638 kilograms of marijuana converted from cash. Finally, this 16,638 kilograms was added to the 487.2 kilograms of seized marijuana for a final drug weight of 17,125.2 kilograms of marijuana. The probation officer determined that Duncan should receive a base offense level of 36 because his offense involved from 10,000 to 30,000 kilograms of marijuana. See U.S.S.G. §2D1.1(c)(2).

Duncan objected only to one aspect of the presentence report. Although he agreed that the $827,000 should be converted to its drug equivalent, he argued that the cash should not be divided equally between marijuana and methamphetamine because there was no factual basis for an equal split. Instead, Duncan proposed that the money be split between the two drugs according to a ratio derived from the relative weights of the marijuana and methamphetamine actually seized. Since the seized marijuana weighed twenty times more than the seized methamphetamine, Duncan suggested that $785,000 be attributed to marijuana and only $42,000 be attributed to methamphetamine. After all necessary conversions were made, Duncan's proposed formula resulted in a total drug quantity of 2,391.48 kilograms of marijuana, and a base offense level of 32.

In response to Duncan's objection, the probation officer prepared an addendum to the presentence report. The officer agreed that his original equal split of the cash was flawed. The officer concluded, however, that Duncan's proposed method also was flawed because it relied on the weights of the two seized drugs without taking any account of how much cash the respective weights represent. Thus, the officer proposed a third approach that relied on the relative weights of the seized drugs, but also accounted for the street value those weights represented.

Under the addendum's methodology, the weight of each drug seized was multiplied by the average retail cost of the substance. The resulting sums of cash were then used as a ratio for dividing the $827,000. In other words, the officer determined that the seized marijuana had a cash value of $32,760, and the seized methamphetamine had a cash value of $11,946. Thus, marijuana represented 73.28% of the total value of seized drugs, and methamphetamine represented the remaining 26.72%. These percentages were then used to divide the $827,000, with $606, 025 (73.28%) being attributed to marijuana and $220,974 (26.72%) attributed to methamphetamine. When all necessary conversions were completed, this third methodology resulted in a total drug quantity of 9,499.35, and a base offense level of 34, two offense levels lower than the one contained in the original presentence report.

The district court rejected Duncan's proposed formula, and adopted the methodology contained in the addendum. Thus, the district court used a base offense

level of 34 and, with adjustments, determined a total offense level of 33, two levels higher than that which would result if Duncan's proposed methodology were adopted.

## II.

On appeal, Duncan's only argument relates to the district court's initial division of the $827,000 between methamphetamine and marijuana. Duncan renews his contention that the money should be split purely on the basis of the relative weights of the marijuana and methamphetamine actually seized. The government counters that the district court's method is not only acceptable, but is actually more accurate than Duncan's because it takes account of the relative cash values of the two seized drugs.

We review the district court's factual finding concerning the quantity of drugs for which a defendant may be held accountable under a clearly erroneous standard. United States v. Rios, 22 F.3d 1024, 1028 (10th Cir. 1994). We will not disturb this finding unless it has no support in the record or, after reviewing all the evidence, we are left with the firm conviction that a mistake has been made. Id.

When calculating the quantity of drugs involved in a particular operation, estimation is not only permissible, but often necessary. U.S.S.G. §2D1.1, comment. (n. 12) ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall *approximate* the quantity of the controlled substance." (emphasis added)); United States v. Richards, 27 F.3d 465, 469 (10th Cir. 1994); United States v.

Paulino, 996 F.2d 1541, 1545 (3d Cir. 1993) (recognizing that a "degree of estimation" is often necessary because the "covert nature of the drug trade precludes seizure and precise measurement of the drugs that flow through a drug distribution conspiracy"). Estimation, however, cannot amount to mere guesswork, but must have "some basis of support in the facts of the particular case." Richards, 27 F.3d at 469 (quoting United States v. Garcia, 994 F.2d 1499, 1508 (10th Cir. 1993)).

Here, both sides agree that the $827,000 should be split between marijuana and methamphetamine. Both sides also agree that the relative weights of the seized drugs provide some factual basis for calculating the proper split. At bottom, Duncan's only objection is not that the district court's estimate is implausible, but that it is no more plausible than Duncan's own estimate. Duncan contends that when a district court chooses between two or more plausible estimates of drug quantity, the court must select the estimate most favorable to the defendant.

It is true that when choosing among "a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." Id. (quoting United States v. Walton, 908 F.2d 1289, 1302 (6th Cir. 1990)). This case, however, does not involve equally plausible estimates; the district court's estimate is much more likely correct than Duncan's. Accepting the parties' shared premise--i.e., that the relative weights of the seized drugs provide a basis for making the split--the district court's estimate is superior because it accounts for the very basic fact

that a low weight of methamphetamine has a higher cash value than a much greater weight of marijuana.

Furthermore, Duncan's arguments on appeal do not even actually address the estimate made by the district court. Duncan attacks the probation officer's first proposed methodology, the equal split of the $827,000 between marijuana and methamphetamine. Duncan asserts that his own method is superior to an equal split. This argument is inapposite. The district court did not accept the probation officer's "equal split" methodology, but rather adopted the formula and estimate contained in the addendum to the presentence report. Appellant's App. at 48. As stated, the addendum's estimate has a basis in the facts of this case and is more likely correct than Duncan's. In adopting this estimate, the district court did not clearly err.

AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge