FILED
United States Court of Appeals
Tenth Circuit

May 21, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BILLY GIBBONS OWENS, a/k/a "Steel Bill," a/k/a "Late Night",

Defendant-Appellant.

No. 11-5117
(D.C. No. 4:10-CR-00193-GKF-1)
(N. D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before **BRISCOE,** Chief Judge, **SEYMOUR** and **EBEL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

The appellant, Billy Gibbons Owens, pleaded guilty to a three-count indictment that charged him with (1) possessing firearms and ammunition after four felony

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

convictions in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); (2) possessing more than five grams of cocaine base with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); and (3) possessing firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Although Owens was caught with less than twelve grams of cocaine base (that is, crack cocaine), the district court determined at a sentencing hearing that he had originally purchased sixty-three grams of the substance and computed his sentence based on that quantity.  Owens appeals, arguing that the district court clearly erred in finding that he purchased sixty-three grams of cocaine base when some statements in the record referred instead to sixty-three grams of cocaine powder.  We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

**I.**

On October 7, 2009, police executed a search warrant at Owens's home in Tulsa, Oklahoma.  After waiving his Miranda rights but before officers searched his home, Owens admitted that he sold crack cocaine.[1]  He said that he had purchased sixty-three grams of crack, but had only an "eight-ball," or about 3.5 grams, left.  ROA, Vol. II at 5–6; id., Vol. III at 5.  The search revealed somewhere between eight and twelve grams of cocaine base, as well as other drugs and guns.  Police read Owens his Miranda rights and questioned him a second time at the police station, where he "confirmed all of his

---

[1] Owens does not dispute the validity of the search warrant or his waiver of Miranda rights.

previous statements." Id., Vol. I at 18. Police reports state, however, that during the second interrogation he admitted to "buy[ing] 63 grams of powder a week." Id. at 18–19.

Owens was charged for possessing firearms and ammunition as a felon, for possessing cocaine base with the intent to distribute, and for possessing firearms in furtherance of drug trafficking. He pleaded guilty to all three counts and a presentence report was prepared. ROA, Vol. III at 1–19. With regard to the second count—possession of cocaine base with intent to distribute—the report calculated a base offense level of twenty-six based on Owens having initially possessed sixty-three grams of crack. Id. at 7 (citing USSG § 2D1.1(c)(7) as providing this base offense level "when the offense involves at least 28 grams but less than 125 grams of Cocaine Base"). Owens objected to the report, arguing that the appropriate quantity of cocaine base for sentencing purposes was 8.54 grams, the amount of crack he said police actually found at his home.[2]

At his sentencing hearing, counsel for Owens argued that because the record contained references both to sixty-three grams of cocaine powder and to sixty-three grams of cocaine base, the government could not prove by a preponderance of the evidence that Owens possessed the latter. Id., Vol. II at 3. Counsel suggested that Owens actually purchased cocaine powder, but then cooked it down to produce a lesser amount of crack to sell. Id. at 4. If Owens had bought powder cocaine rather than crack, his base offense

---

[2] Owens also raised objections regarding the presentence report's inclusion of other drugs he had possessed for personal use and its double counting of his firearms. The report was revised to resolve these issues.

level would have been only sixteen.  Id. at 3.

Counsel for the government responded by citing Owens's admission that selling crack was his primary source of income and his statement that he had purchased sixty-three grams of crack but only had the eight-ball left.  Id. at 5–6.  The government also argued that if Owens had purchased sixty-three grams of cocaine powder, the cooking process would in any event have produced sixty-three grams of crack.  Id. at 6–7.[3]  Owens's attorney disputed this claim.  Id. at 7–8.

The district court found, as a factual matter, that "the defendant admitted to police that he originally purchased 63 grams of cocaine base."  Id. at 9.  "[T]herefore," the court determined, "the probation office correctly used that amount of cocaine base to calculate the defendant's base offense level."  Id.  The court overruled Owens's objection and sentenced Owens to 130 months' imprisonment.  The court imposed terms of seventy months as to counts one and two and a term of sixty months as to count three, with the sentences for counts one and two to run concurrently and the sentence for count three to run consecutively.  ROA, Vol. II at 13–14.

---

[3] Counsel for the government asserted that the conversion of "[c]ocaine to crack cocaine is almost always a hundred percent . . . . [I]f you cook a kilo of cocaine you're likely to get a kilo or even more of crack cocaine out of that kilo."  Id., Vol. II at 7.  In response to the court's question, "How is it if you cook out the impurities you come out . . . with a hundred percent?," counsel responded, "I have absolutely no idea, Your Honor, but it has just worked that way for the 25 years I've been . . . [p]rosecuting cocaine people, and crack cocaine people."  ROA, Vol. II at 7.  Owens does not argue that the court ultimately based any of its findings on the government's representations regarding powder-to-crack conversion ratios, and we therefore express no view as to the correctness of those representations.

## II.

Owens argues on appeal that the district court erred in determining that he originally purchased sixty-three grams of cocaine base rather than cocaine powder. He contends that by adopting one figure over the other without explanation, the court impermissibly shifted the burden of persuasion onto him. Aplt. Br. at 9 (quoting United States v. Williams, 374 F.3d 941, 947 (10th Cir. 2004)).

"The government has the burden of proving the quantity of drugs for sentencing purposes." United States v. Nieto, 60 F.3d 1464, 1469 (10th Cir. 1995) (citing United States v. Garcia, 994 F.2d 1499, 1508 (10th Cir. 1993)). We review the district court's determination for clear error, and we "will not disturb it unless it has no support in the record or unless, after reviewing all the evidence, [the court is] firmly convinced that an error has been made." Id. "Where, as here, the drugs are not seized and the court relies upon an estimate to determine the offense level under the sentencing guidelines, the information underlying the estimate must possess a 'minimum indicia of trustworthiness.'" Id. (quoting Garcia, 994 F.2d at 1508). "We have allowed quantity determinations to be based on a variety of circumstances, so long as they have 'some basis of support in the facts of the particular case.'" Id. (quoting Garcia, 994 F.2d at 1508).

The district court did not clearly err. It considered conflicting statements in the record and credited police reports that Owens admitted to purchasing sixty-three grams of crack over other police reports that he admitted to purchasing cocaine powder. ROA,

5

Vol. II at 9. Indeed, the court specifically cited a page in the record where an officer had documented Owens's admission that he had originally purchased sixty-three grams of crack cocaine. Id. Although the district court never explained why it credited one statement over the others, there was enough evidence on the record to support its conclusion.

The court was presented with evidence that Owens initially admitted to purchasing sixty-three grams of crack; evidence that he then confirmed this statement at a second interrogation; and evidence that, at the second interrogation, he also said that he purchased sixty-three grams of powder per week. The district court also knew that Owens was found with crack, but not with any powder cocaine. Further, Owens had admitted that crack sales were his main source of income. Finally, while defense counsel implied that Owens had purchased cocaine powder and cooked it down into crack, the record contains no evidence that this occurred.[4] In sum, with the exception of two references to powder from Owens's second interrogation, all of the evidence suggested that Owens purchased crack. Thus, Owen fails to show that the district court's resolution of the conflict in the record was "not plausible or permissible in light of the entire record

---

[4] The record does not suggest that police found any paraphernalia associated with the cooking process in Owens's home. See, e.g., United States v. Fox, 189 F.3d 1115, 1119–20 (9th Cir. 1999) ("[A] pot and baking soda used for cooking cocaine powder into crack cocaine were found at Potts's home."); United States v. Abdunafi, 301 F. App'x 146, 148 (3d Cir. 2008) (unpublished) ("The van also contained paraphernalia used to cook powder cocaine into crack, including a Pyrex® beaker, a sifter, and a hotplate which had crack residue on it.").

on appeal." <u>United States v. Morales</u>, 108 F.3d 1213, 1225 (10th Cir. 1997) (quotation omitted).

## III.

Owens's sentence is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge