**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pauline RICHARDS, also known as Janie Nard, Defendant–Appellant.**

No. 93–6332.

United States Court of Appeals, Tenth Circuit.

June 7, 1994.

SUBMITTED ON THE BRIEFS: *

David Autry and Richard W. Anderson, Oklahoma City, OK, on the brief for defendant-appellant.

Vicki Miles–LaGrange, U.S. Atty., and M. Jay Farber, Asst. U.S. Atty., Oklahoma City, OK, on the brief for plaintiff-appellee.

Before MOORE, ANDERSON, and KELLY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Pauline Richards, a/k/a Janie Nard, pled guilty to one drug distribution count of an indictment charging her with six counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) and four counts of using a telephone to facilitate a drug transaction, in violation of 21 U.S.C. § 843(b). She was sentenced to 84 months imprisonment, followed by three years of supervised release. She appeals that sentence. We reverse and remand.

## BACKGROUND

The six distribution of heroin counts against Ms. Richards stemmed from her sale, to an undercover Oklahoma City Police Department police officer, of quantities of heroin in six different transactions occurring between September 1992 and February 1993. At the last transaction, Ms. Richards showed the undercover officer an additional 10.5 grams, but apparently did not sell it to him. The total weight of heroin involved was 63.48 grams. Ms. Richards did not dispute that the total weight was relevant for sentencing on the distribution count to which she pled guilty.

Ms. Richards did object, however, to the inclusion of 80 additional grams of heroin as relevant for purposes of calculating her base offense level. The inclusion of these 80 additional grams was based upon the testimony of a government witness, Becky Drake. She testified at the sentencing hearing that she had known Ms. Richards for approximately four or five years, that Drug Enforcement Agency ("DEA") agents had interviewed her twice concerning her knowledge of Ms. Richards' drug-related activities, and that she had purchased heroin on a weekly basis from Ms. Richards from January 1991 through April 1991. She was unable to recall very much about these purchases, however, either as to specific transactions or quantities:

Q. They [the DEA agents] wanted to know particularly about purchases that you had made of heroin ... from Ms. Nard [Ms. Richards]; ...?

A. That's correct.

Q. At that time did you not tell them that you purchased heroin from Ms. Nard from approximately ... January of 1991 until the end of April of 1991?

A. Approximately three to four months.

Q. You told them at that time that you purchased from her, along with another person that you were with, on a weekly basis, average?

A. That's correct.

Q. That each time you purchased from her, it was anywhere between you and your friend who you went with, five to six grams; is that correct?

A. The amounts varied.

. . . .

I did not know the exact amount, that they varied from week to week. One week, it might be one or two and the next week, it might be three or four. There was no certain cut and dry amount.

. . . .

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Q. Did you not state that you were present when Richards distributed five to six grams of heroin in one-week period from the beginning of January of 1991 to the end of April of 1991?

A. I said that there were amounts purchased, yes.

Q. Did you not say exactly what I just read, those amounts?

A. I told Mr. Long [the DEA agent] they varied. Those certain amounts were purchased on a week, yes; but that other weeks, they varied. . . .

Q. But on the average this is the amounts that you purchased, on the average, being conservative.

Isn't that what they told you, that they wanted you to be conservative?

A. Yes.

Tr. of Sentencing, Pl.'s Supplemental App. at 16–18. On cross-examination, Ms. Drake further testified:

Q. When you were interviewed by Agent Long in July of this year, did you have any independent recollection of how many times you went to Janie Nard and purchased heroin in January of 199[1]?

A. We discussed, myself—another individual named Larry and myself went, and her husband. It was in reference to buys that were made for him, for him.

Q. Do you have any independent recollection today how many times you purchased heroin in January of this year from Janie Nard?

A. The amounts varied.

Q. Do you have any recollection today how much—

THE COURT: Do you not understand his questions? You don't seem to be responding to either of the questions.

THE WITNESS: Maybe I do not understand.

. . . .

[THE COURT:] Do you have any independent recollection of the amounts and quantities that you purchased from her in July, was it?

MR. ANDERSON [Ms. Richards' counsel]: January of 1991?

THE COURT: Do you understand the question?

THE WITNESS: Yes, sir.

THE COURT: Answer it.

THE WITNESS: With a "yes" or a "no"?

THE COURT: Yes, if you can. Do you have any independent recollection?

THE WITNESS: Yes, somewhat.

Q. Do you know how many purchases you made in February?

A. On a weekly basis, the amounts varied as I told Mr. Farber.

Q. Do you know how many purchases were made in March?

A. So many per week.

Q. Was it the same number every week?

A. No, sir, they varied.

Q. Do you remember January of 1991?

A. As far as what?

Q. Do you remember the events that happened in 1991?

A. Somewhat.

Q. Were you taking heroin during that time?

A. Yes, sir, I was.

. . . .

Q. Did you use heroin every day in January of 1991?

A. Most likely, yes.

Q. Did you use heroin every day in February of 1991?

A. I was a drug addict, Mr. Anderson, I used drugs for several years standing. I don't know how many of them at times.

. . . .

Q. Isn't it true that you really don't know, have any idea how much quantity of heroin, or what was perceived to be heroin, was given to you by Janie Nard in the four months in 1991?

A. We tried to estimate it. I don't know the exact—

THE COURT: I can't hear you.

THE WITNESS: We tried to estimate it. I don't know the exact amount, no, sir.

*Id.* at 21–24. She further testified that the DEA agents estimated the quantity and she

"simply agreed." *Id.* at 25; *see also id.* at 27. She concluded her recross examination with the statement that what she told the agents "was an estimate, a guess." *Id.* at 29.

Agent Long testified differently. He testified that Ms. Drake was "pretty thorough or exact on the time." *Id.* at 33. He stated he "was not putting any type of amounts into the report," that she told him she and the other purchaser "would usually always purchase at least five to six grams on a weekly basis from Ms. Nard" and that she was "more exact than her testimony" at the sentencing hearing. *Id.* at 33–34. Calling it a "close call," the district court held that "the preponderance of the evidence is that the testimony, vacillating as it is, supports a finding that relevant conduct did involve the 80 grams." *Id.* at 79–80.

On appeal, Ms. Richards challenges both the inclusion of the sales to Ms. Drake as relevant conduct and the finding that the quantity of heroin sold was 80 grams.

## DISCUSSION

■■■ Under the guidelines, drug quantities are aggregated "for drug offenses which are 'part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Washington,* 11 F.3d 1510, 1516 (10th Cir.1993) (quoting U.S.S.G. § 1B1.3(a)(2)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1404, 128 L.Ed.2d 76 (1994). We review for clear error district court factual findings regarding drug quantities and whether certain conduct is relevant conduct under the guidelines. *Id.* at 1515, 1517. The information used by the district court to establish the drug quantities involved in relevant conduct must have "sufficient indicia of reliability." *Id.* at 1516; *see also* U.S.S.G. § 6A1.3(a), p.s. The government must prove the existence of the additional quantities by a preponderance of the evidence. *Washington,* 11 F.3d at 1516; *see also United States v. Ortiz,* 993 F.2d 204, 207 (10th Cir.1993).

### I. Inclusion as Relevant Conduct:

■■■ Ms. Richards objects to the district court's finding that the sales to Ms. Drake were "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). It does not appear from the record that she objected to this below, either in her written objections to the presentence report or at the sentencing hearing.[1] That failure to object "precludes us from considering the merits of [her] claims unless such claims constitute plain error." *United States v. Saucedo,* 950 F.2d 1508, 1511 (10th Cir.1991). We will only find such plain error where a "'miscarriage of justice would otherwise result.'" *Id.* (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)). There is no such error here.

This court has recently stated:

> "[S]ame course of conduct" "looks to whether the defendant repeats the same type of criminal activity over time. It does not require that acts be 'connected together' by common participants or by an overall scheme. It focuses instead on whether defendant has engaged in an identifiable 'behavior pattern' of specific criminal activity."

*United States v. Roederer,* 11 F.3d 973, 979 (10th Cir.1993) (quoting *United States v. Perdomo,* 927 F.2d 111, 115 (2d Cir.1991) (citation omitted)). As we further indicated, "[s]imilarity, regularity, and temporal proximity are the significant elements to be evaluated." *Id.* While the district court made no specific findings on this issue, we may affirm "on any ground that finds support in the record." *Id.* at 977. We hold that the record supports the finding that the sales of heroin to Ms. Drake were part of the same course of conduct. They were regular sales of the same drug (heroin), occurring seventeen months before the offense of conviction. Ms. Drake's testimony, while vague as to the quantities involved, unambiguously indicated that the sales occurred weekly over a four month period. Her failure to recall the de-

---

**1.** While her written objections to the presentence report are ambiguous, she clearly objected generally at the sentencing hearing to Ms. Drake's testimony, arguing at length that it was vague and insufficient to support an increase in her base offense level. She did not specifically argue that the sales were not a part of the same course of conduct.

tails of individual transactions is not fatal. *See id.* at 980. The record supports the finding that the sales were relevant conduct for sentencing purposes, and the court committed no plain error in considering them as such.

## II. Calculation of Quantity:

More problematic is the conclusion that the sales involved 80 grams of heroin. As we have recently observed, "the relevant issue is not whether [d]efendant distributed [heroin], but rather the quantity of [heroin] that [d]efendant distributed." *Ortiz*, 993 F.2d at 208.

■ Estimates of drug quantities are not necessarily forbidden: "[w]e have allowed quantity determinations for base offense level calculations to be based on estimates under a variety of circumstances." *United States v. Garcia*, 994 F.2d 1499, 1508 (10th Cir.1993). The estimates must, however, have "some basis of support in the facts of the particular case." *Id.* " '[W]hen choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution.' " *Ortiz*, 993 F.2d at 208 (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.), *cert. denied*, 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990)). We agree with the Third Circuit's observation that the recognition of the need to estimate drug quantities at times "is not a license to calculate drug quantities by guesswork." *United States v. Paulino*, 996 F.2d 1541, 1545 (3d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 449, 126 L.Ed.2d 382 (1993); *see also United States v. Beler*, 20 F.3d 1428, 1433 n. 2 (7th Cir.1994).

■ We find that there is insufficient minimally reliable evidence to meet the government's burden of proving the existence of the 80 grams of additional heroin. *Ortiz* in-

volved out-of-court statements by a confidential informant, supported by the defendant's admission that he had sold marijuana to two friends on several occasions and an intercepted phone call establishing a one-time marijuana sale. We held that that evidence did not support the conclusion that defendant was distributing three pounds of marijuana per week over an eighteen month period.

Here, Ms. Drake testified in court as to the weekly sales of heroin, but her testimony was extremely vague as to quantities. Indeed, her testimony was that the amounts varied from week to week, sometimes one or two grams and sometimes four or five. She also testified that the DEA agents essentially came up with an "estimate" or "guess" of 80 grams, on the assumption that she purchased five grams per week for sixteen weeks. No other corroborating evidence was presented. Thus, the evidence showed both that she agreed with the agents' guess that she purchased five grams per week for sixteen weeks, and that she was persistently unable to state in court how much she purchased from week to week, other than that the amounts varied from one or two grams to four or five grams.[2] While credibility determinations are for the district court, *United States v. McIntyre*, 997 F.2d 687, 709 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994), we have here flatly contradictory testimony. *Cf. Beler*, 20 F.3d at 1433–34 (calling into question reliability of affidavit stating drug quantity when affiant testified at trial he was unable to estimate quantity). " 'Evidence which does not preponderate or is in equipoise simply fails to meet the required burden of proof.' " *United States v. Garcia*, 994 F.2d 1499, 1509 (10th Cir.1993) (quoting *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990)). We hold that the government failed to meet its burden of proving that Ms.

---

2. Ms. Drake testified that she was a heroin addict throughout the time that she purchased heroin from Ms. Richards. A number of circuits impose a higher standard of scrutiny to drug quantity estimates made by an addict-informant. *See Beler*, 20 F.3d at 1435–36; *United States v. Miele*, 989 F.2d 659, 667 (3d Cir.1993) ("Because of the questionable reliability of an addict-informant, we think it is crucial that a district court receive with caution and scrutinize with care drug quan-

tity or other precise information provided by such a witness before basing a sentencing determination on that information."); *United States v. Simmons*, 964 F.2d 763, 776 (8th Cir.) (rejecting drug quantity estimates by addict-informant), *cert. denied*, —— U.S. ——, 113 S.Ct. 632, 121 L.Ed.2d 563 (1992); *United States v. Robison*, 904 F.2d 365, 371–72 (6th Cir.) (same), *cert. denied*, 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990).

Richards sold 80 grams of heroin to Ms. Drake. *See United States v. Roberts,* 14 F.3d 502, 520–21 (10th Cir.1993).

For the foregoing reasons, Ms. Richards' sentence is REVERSED and the case is REMANDED to the district court with instructions to VACATE her sentence and re-sentence her consistent with this opinion.