USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-2360 DAVID ELWELL, Petitioner-Appellant, v. UNITED STATES OF AMERICA, Respondent-Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Stahl, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Joseph K. Kenyon with whom Stephen Weymouth was on brief for ________________ ________________ appellant. George W. Vien, Assistant U.S. Attorney, and Donald K. Stern, ______________ _______________ United States Attorney, U.S. Department of Justice, was on brief for appellee. ____________________ September 9, 1996 ____________________  CAMPBELL, Senior Circuit Judge. David Elwell ____________________ appeals from the denial by the district court of his motion under 28 U.S.C. 2255 to vacate, set aside or correct the sentence it imposed following his conviction for drug-related offenses. Elwell contends, inter alia, that the court made errors in determining the amount of cocaine to attribute to him for sentencing purposes.  I. Procedural and Factual History I. Procedural and Factual History After a jury trial in the district court, Elwell was convicted on February 15, 1991, of one count of conspiracy to distribute cocaine, in violation of 21 U.S.C.  846; two substantive counts of possession of cocaine with intent to distribute, in violation of 21 U.S.C. 841(a)(1); and one count of willfully subscribing to a false income tax return, in violation of 21 U.S.C. 7206(1). He was sentenced to 78 months imprisonment concurrently on each of the drug counts, and 36 months on the tax count, to be served concurrently. Elwell took a direct appeal to this court, which affirmed the judgment of the district court. United ______ States v. Elwell, 984 F.2d 1289 (1st Cir. 1993), cert denied, ______ ______ ___________ 113 S. Ct. 2429 (1993). He then brought the present motion under 28 U.S.C. 2255. This was denied in a comprehensive opinion by the same judge who had sentenced him. Elwell now appeals.  The primary witness against Elwell at his criminal trial was Mark Polito, a cocaine addict turned government informant. Polito testified to having purchased "an ounce-- two ounces" from Richard Moretto every other week or so over a period of four to five months in the spring of 1988. When Moretto had to report to prison in or around April 1988, he introduced Polito to his distributor, Hobart Willis. Willis, in turn, put Polito in touch with Elwell, who managed Willis' "northern territory." Elwell supplied Polito's cocaine needs throughout the summer of 1988. Polito eventually fell into debt to Elwell because of his cocaine habit and, under pressure for payment, began to cooperate with law enforcement authorities. While cooperating, Polito made two more cocaine purchases from Elwell, on November 17, 1988, and December 19, 1988. In a tape recorded statement, Elwell stated that Polito owed him "twenty-four somethin'." Elwell's conviction was for the final two purchases, which amounted to a total of three ounces of cocaine. At sentencing, the district court found that Elwell had also distributed an additional 20 ounces of cocaine to Polito during the course of the previous summer of 1988. The court, therefore, attributed sales of over 500 grams to him -3- for purposes of determining the Base Offense Level.1 Polito testified at trial that he had purchased "18, maybe 20" ounces of cocaine from Elwell during the summer. At sentencing, the judge stated, among other remarks, What that [the rule allowing the court to consider relevant information without regard to its admissibility under the rules of evidence] means to me is that I can review all of the material I have. I can assess the credibility of Mr. Polito, the evidence which tended to corroborate Mr. Polito or contradict him, the testimony of other participants, such as Mr. Willis--not of the testimony, but of the evidence that pertained to Mr. Willis and Mr. Willis's connection with Mr. Elwell, and make a decision as to the disputed findings of fact. I heard that evidence. Mr. Polito testified, in summary, that he bought one or two ounces, one or two ounces every week or every two weeks from Mr. Moretto over a period of four to five months. I calculated that had to be about 14 purchases, not every week but for a period of 14 weeks, not 20 weeks but 14 weeks of one to two ounces. I took the one to two ounces to be one and a half ounces, and I added 14 purchases to one and and [sic] a half ounces to 20 ounces. That's a conclusion, a factual conclusion I made.  ____________________ 1. United States Sentencing Guidelines 1B1.3(a)(2) provides that in determining the Base Offense Level, the court shall include acts and omissions committed by the defendant as part of the same course of conduct or common scheme or plan as the offense of conviction when, inter alia, the offense level is determined largely on the basis of the total quantity of a substance involved. See U.S.S.G.  ___ 3D1.2(d). U.S.S.G. 2D1.1(c)(7) provides for a Base Offense Level of 26 for unlawfully selling between 500 grams and two kilograms of cocaine in a continuing criminal enterprise. -4- Appellant relies on the second paragraph of the judge's above statement to argue (1) that the judge improperly included cocaine sold by a co-conspirator before Elwell joined the conspiracy to arrive at the 23-ounce figure; and (2) that the judge improperly used averages to calculate the amount of cocaine sold by Elwell in purported violation of new case law, entitling Elwell to reopen this court's previous affirmance on direct appeal of his sentence.  Appellant further contends that the district court should have scrutinized more closely Polito's drug quantity estimates because of Polito's status as an addict-informant, and that appellant should receive reductions in his sentence for being a "minor participant" in the criminal activity in which he was involved and for "acceptance of responsibility" under U.S.S.G. 3B1.2(b) and 3E1.1.2 II. II. A. Inclusion of Cocaine Sold by a Co-conspirator _____________________________________________ In arguing that the judge improperly enlarged Elwell's offense level by counting cocaine sold earlier by a co-conspirator, appellant relies upon a November 1, 1994  ____________________ 2. The United States Sentencing Guidelines provide for a two-level decrease in the defendant's Base Offense Level if he or she was a minor participant in the criminal activity.  The Guidelines also provide for a two-level decrease if the defendant clearly demonstrates acceptance of responsibility for his or her offense. -5- amendment to the Application Notes of U.S.S.G. 1B1.3 which states, "A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct. . . " U.S.S.G. 1B1.3, comment. (n.2).  The government correctly points out, however, that the total amount of cocaine counted by the district court as relevant conduct for sentencing purposes did not include amounts sold earlier to Polito by Moretto. Rather the court arrived at its finding that Elwell had sold 20 ounces in addition to the three ounces underlying his conviction from Polito's sworn testimony of having purchased "18, maybe 20" ounces of cocaine from Elwell in the summer of 1988.3 Hence there is no occasion to consider the law relative to a co- conspirator's drug sales.  It is true, as earlier mentioned, that the court also referred to Polito's testimony about cocaine purchases from Moretto earlier that spring, over a four to five month period. But the judge's language in doing so suggests that the court was discussing the prior transactions simply as part of its assessment of the overall credibility of Polito's  ____________________ 3. As this court pointed out on direct appeal, since even the low-end figure of 18 ounces is 504 grams, exceeding the Guidelines' 500 gram minimum for the sentence in issue, the court's finding of 20 ounces rather than 18 is of no consequence. Elwell, 984 F.2d at 1297. Elwell makes no ______ argument based on the two-ounce difference. -6- testimony, comparing the amounts earlier purchased from Moretto with the "18, maybe 20" ounces Polito claimed to have bought from Elwell within a comparable time frame. This interpretation dove-tails with the district court's finding at sentencing, "I conclude that Mr. Elwell distributed at __________ least 20 ounces of cocaine to the witness . . . during the __________ summer of 1988 . . . " (Emphasis supplied). Had the court ______________ meant that some or all of the 20 ounces came from Moretto, it would not have said that "Mr. Elwell distributed at least 20 __________ ounces . . .", nor would it have referred to sales in the summer, rather than the spring, of 1988.  That this was what the court meant was confirmed by the trial judge himself in his opinion disposing of Elwell's motion under 2255. The judge flatly stated, "I was referring to the twenty ounces which Elwell sold directly to Polito." This court earlier reached the same conclusion when deciding Elwell's direct appeal, i.e. we stated that the district court's findings were based upon cocaine Elwell sold ______ during the summer of 1988. Elwell, 984 F.2d at 1297-98.  _________________________ ______ As the district court rested its finding of 23 ounces on amounts sold by Elwell in the summer and fall, not amounts sold earlier to Polito by another supplier, we see no merit in appellant's contention that the district court violated the November 1, 1994 amendment to the Application Notes of U.S.S.G. 1B1.3. -7- Appellant also seems to argue that the events which occurred before he personally sold drugs to Polito may not be considered even for background corroborative and credibility purposes. We disagree. United States Sentencing Guidelines 6A1.3(a) provides, in part, "In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." While the Moretto sales, standing alone, would be inadequate to establish the amounts Elwell later sold, they have some general relevance to Polito's testimony of the specific amounts he purchased from Elwell, since they help show the pattern of Polito's purchases during the year. It is commonplace that a conspiracy's past activities may be considered at sentencing for various purposes, e.g., to determine the volume of drugs a late- joining co-conspirator reasonably foresaw would be sold by the conspiracy in the future. United States v. O'Campo, 973 _____________ _______ F.2d 1015, 1025-26 & 1024-25 n.9 (1st Cir. 1992). See also ________ United States v. Carreon, 11 F.3d 1225, 1236 (5th Cir. 1994); _____________ _______ United States v. Madkins, 14 F.3d 277, 279 n.10 (5th Cir. _____________ _______ 1994); United States v. Patriarca, 912 F. Supp. 596, 606, 610 _____________ _________ (D. Mass. 1995). Here, the frequency and quantity of drugs -8- previously purchased by Polito, before Elwell began to supply him, helped verify the amounts later said to have been furnished by Elwell, since it might be thought that Polito's requirements and habits would remain somewhat consistent over time. B. The Use of Averages to Calculate Amounts ________________________________________ Elwell complains that the district court wrongly used "averaging" in holding him responsible for the sale of 23 ounces. He bases this argument on the district court's quoted review of the sales by Moretto to Polito in which the judge indicated that the amounts sold each time averaged out to one and one-half ounces. Elwell also finds fault with the court's estimates of the frequency of Moretto's sales.  As already pointed out, however, the district court's finding of 23 ounces does not rest upon Moretto's previous sales to Polito but rather is based on Polito's testimony that he had purchased "18, maybe 20" ounces of cocaine from Elwell in the summer of 1988 (and, in addition, on evidence of the three ounces sold by Elwell to Polito in November and December of that year). This evidence of summer sales was not the product of averaging nor did it call for averaging. It is true that the court also made certain inferences about the earlier transactions with Moretto,  including the average quantities purchased, but as we have indicated, the court did so merely to assist in its overall -9- evaluation of Polito's testimony concerning Elwell's own sales to him, upon which the finding of 23 ounces was based. Elwell argues also that the deductions the court drew from the Moretto evidence were flawed, leading it to attribute too much cocaine to this earlier period, and to err in believing that these previous sales corroborated the quantities attributed to Elwell in the latter period. The short answer to this argument is that Elwell is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law. Davis v. _____ United States, 417 U.S. 333, 342 (1974) (holding that a  _____________ 2255 hearing is permitted on an issue previously addressed on direct appeal when there has been an intervening change in the law). Cf. Singleton v. United States, 26 F.3d 233, 240 ___ _________ _____________ (1st Cir. 1993) ("'[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. 2255 motion.'" (quoting Dirring v. United States, 370 F.2d 862, _______ _____________ 864 (1st Cir. 1967))), cert. denied, 115 S. Ct. 517 (1994); ____________ United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990) ("We _____________ _______ note that certain other claims raised in the 2255 motion were decided on direct appeal and may not be relitigated under a different label on collateral review."). Likewise, Elwell is not entitled to relitigate issues that could have been raised on direct appeal, but were not, absent a showing of cause excusing the default and actual prejudice resulting -10- from the error of which he complains. See United States v. ___ _____________ Frady, 456 U.S. 152, 167-68 (1982); Suveges v. United States, _____ _______ _____________ 7 F.3d 6, 10 (1st Cir. 1993) (holding that a party must show cause and prejudice to raise an objection not argued on direct appeal in a 2255 motion (citing Frady)). Elwell _____ vigorously argued on direct appeal that the 20 ounces attributed to him was unsupported and too high; this court considered those arguments expressly, and to the extent he now seeks to repeat and embellish these contentions, he has failed to show cause for being allowed to do so. In particular, there is nothing to Elwell's argument that two cases decided by this court, United States _____________ v. Sepulveda, 15 F.3d 1161 (1st Cir. 1993), cert. denied, 114 _________ ____________ S. Ct. 2714 (1994) and United States v. Welch, 15 F.3d 1202 _____________ _____ (1st Cir. 1993), cert. denied, 114 S. Ct. 1161 and 114 S. Ct. ____________ 1863, have so changed the law since Elwell's direct appeal as to warrant the reopening of our earlier affirmance of Elwell's sentence on direct appeal.  This court did not rule in Sepulveda and Welch that _________ _____ averaging was no longer permissible. We merely held in the circumstances of those cases that the particular calculations used, based on very broadly based averages, were insufficiently precise to determine the amount of drugs used.  In later cases, where averages were taken from ranges with tighter margins, we accepted their use. See, e.g., United ___ ____ ______ -11- States v. Webster, 54 F.3d 1, 5-6 (1st Cir. 1995). In the ______ _______ present case, unlike Sepulveda and Welch, the main evidence _________ _____ upon which the court relied Polito's testimony as to the amounts Elwell sold him in the summer of 1988 did not involve averaging at all. The averaging employed related merely to Moretto's earlier sales, discussed for purposes of analogy only. The one and a half ounce average, moreover, fell arguably within tight margins, although we need not get into this in order to conclude that Sepulveda and Welch did _________ _____ not alter the law applicable on direct appeal. This being so, Elwell may not relitigate collaterally his challenge to the sufficiency of the evidence on which his Base Offense Level rests. See Singleton, 26 F.3d at 240.  ___ _________ C. Reliance on Addict-Informant Witnesses ______________________________________ In his third claim of error, Elwell contends that the district court should have more carefully scrutinized Polito's testimony because of his status as an addict- informant. This argument was litigated and rejected in Polito's direct appeal. Elwell, 984 F.2d at 1297-98. As ______ explained in Part B, above, relitigation of the issue is thus barred unless there has been an intervening change in the law. See Singleton, 26 F.3d at 240. ___ _________ In support of his contention that there has been such a change, Elwell points to several recent decisions in -12- other circuits which have imposed a "heightened standard of scrutiny" on testimony by drug addicts who are cooperating with the government. See United States v. Beler, 20 F.3d ___ _____________ _____ 1428, 1435 (7th Cir. 1994); Miele, 989 F.2d at 666-68; United _____ ______ States v. Simmons, 964 F.2d 763, 776 (8th Cir. 1992), cert. ______ _______ _____ denied, 506 U.S. 1011 (1992); United States v. Robison, 904 ______ _____________ _______ F.2d 365, 371-72 (6th Cir. 1990), cert. denied, 498 U.S. 946 ____________ (1990). See also United States v. Richards, 27 F.3d 465, 469 ________ _____________ ________ n.2 (10th Cir. 1994) (noting this line of cases but expressing neither agreement nor disagreement). But see _______ United States v. Browning, 61 F.3d 752, 755 n.2 (10th Cir. _____________ ________ 1995) (distinguishing the Simmons line of cases on their _______ facts as dealing only with addict-informants whose testimony contradicted itself and/or who admitted to hazy memories).  Whether or not the law can be said to have changed in other circuits, this circuit has not adopted such a rule of heightened scrutiny, nor are we aware of any recent congressional enactments or pronouncements by the Supreme Court making an alteration in the law in such instances. In Webster, we allowed the district court to base its sentence _______ on the testimony of a witness who was "an admitted perjurer, a drug user, and a turncoat who received a substantially reduced sentence for implicating others." Webster, 54 F.3d _______ -13- at 5. We concluded that the trial judge was able to make the requisite credibility assessments concerning that witness.4  D. Minor Participant and Acceptance of Responsibility __________________________________________________ Reductions __________ In appellant's fourth point of error, he argues that, should he prevail on any of his previous three points of error, he should receive a reduction in his sentence for being a minor participant in the conspiracy and for accepting responsibility for the amount of cocaine he distributed. We find little merit in these arguments on their face, but since we reject Elwell's first three points of error, they are in any case moot. Affirmed. ________   ____________________ 4. We add that the mere movement of one or more other circuits towards heightened scrutiny in certain cases would not amount to intervening new law which would allow Elwell to relitigate an issue already decided by this court on direct appeal. Both Simmons and Robison, upon which Elwell in part _______ _______ relies, were, moreover, decided before the direct appeal in this case was argued. -14-