**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 14 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LUIS CISNEROS LEDESMA, aka
Luis Garcia, aka "Luis",

Defendant - Appellant.

No. 99-8026

(D.C. No. 97-CR-132-2)

(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **McKAY**, and **HENRY**, Circuit Judges.

Defendant-Appellant Luis Cisneros Ledesma appeals his conviction for
conspiracy to distribute methamphetamine, alleging that the evidence was
insufficient to support the conviction. He also challenges the district court's
exclusion of testimony by his expert witness. Finally, he appeals his sentence,
objecting to the trial court's determination that the relevant drug quantity
assignable to him exceeded one kilogram of methamphetamine.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

I.

Defendant, known by many aliases including "Spider," was charged by indictment with conspiracy to possess with intent to distribute and distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The charge was based on his alleged drug sales during the period from March through December 1996. He was also charged with unlawful reentry into the United States after having been deported, a violation of 8 U.S.C. § 1326(b)(2).

Defendant entered a plea of not guilty before the district court on July 24, 1998. On August 21, his trial was severed from that of his co-defendants on the indictment, Becky Henderson, Robert Schram, and Brett Christiansen. Immediately following commencement of a jury trial on December 14, he entered a plea of guilty to the unlawful entry count. On December 18, 1998, the jury returned a guilty verdict on the conspiracy and distribution count.

The government presented evidence at trial that Defendant was a substantial supplier of methamphetamine to a drug trafficking organization operating in and near Evanston, Wyoming. The government's principal witness was David Reese. Mr. Reese testified that over a period of approximately eight months, he accompanied Mr. Schram on trips to Salt Lake City, Utah, to purchase drugs from suppliers including Defendant and co-defendant Daniel Chaldez.[1] Mr.

---

[1]Daniel Chaldez entered a guilty plea and was sentenced on July 30, 1998.

Reese stated that he first met Defendant in late March 1996 when the arrest of Mr. Chaldez forced Mr. Reese and Mr. Schram to find another drug source. On this occasion Mr. Reese and Mr. Schram traveled to an Arby's restaurant off Redwood Road in Salt Lake City where Mr. Schram made a telephone call. Shortly thereafter, Defendant arrived on the scene, spoke to Mr. Reese, and then met privately with Mr. Schram. Mr. Reese testified that Mr. Schram obtained approximately an ounce of methamphetamine at this meeting with Defendant. See R., Vol. 6 at 50, 63-65.

Mr. Reese testified that following this initial contact he and Mr. Schram obtained one- to two-ounce quantities of methamphetamine from Defendant on a weekly or twice-weekly basis from at least late March 1996 through April or May of 1996. See id. at 67-69. At that time Mr. Reese and Mr. Schram ended their relationship, and Mr. Reese began purchasing directly from Defendant, first in one-half ounce quantities and later in ounce quantities. See id. at 73-74. He also testified to his receipt of a one-pound chunk of methamphetamine from Defendant in September or October of 1996. See id. at 74-77. Witnesses Ms. Henderson and Bill Piper, Mr. Reese's friend, corroborated some of Mr. Reese's details concerning this transaction. See id. Vol. 7 at 95; Vol. 8 at 28-30. When Mr. Reese delivered $4000 toward his outstanding balance on the one-pound chunk, Defendant supplied him with an additional four- to six-ounce quantity, the amount

-3-

he "almost always picked up" at that point. Id., Vol. 6 at 88. From that time until his arrest in December 1996, Mr. Reese traveled to Salt Lake approximately every week or every two weeks, picking up four to six ounces from Defendant on each trip. On the day of his arrest, police found Mr. Reese in possession of four and one-eighth ounces of methamphetamine. Mr. Reese testified that these drugs came from Defendant. See id. at 49, 88.

While Mr. Reese was the only individual who could actually identify Defendant as the person from whom he obtained methamphetamine, several witnesses offered corroborating testimony. Tami Boyles, formerly Mr. Schram's girlfriend, Mr. Piper, and Ms. Henderson all testified at Defendant's trial that they had taken one or more trips to Salt Lake City with Mr. Reese to purchase methamphetamine from his source and that they knew his source to be someone called "Spider." The details of their accounts–the Redwood Road area, phone calls from Arby's, and short drives to a nearby apartment complex–were similar to those given by Mr. Reese. See id., Vol. 7 at 39-42, 90-92; Vol. 8 at 26, 30-32.

Other non-accomplice testimony also corroborated Mr. Reese's testimony that Defendant was his drug source. Leila Evers, the manager of the Hartland Apartments where Mr. Reese said he met Defendant, testified that Oclires Garcia, identified as Defendant's girlfriend, rented an apartment at that complex from October 1995 to November 1996. Clyde Lindquist, the maintenance supervisor

for Hartland Apartments, stated that he had previously identified a photograph of Defendant as a person he had frequently seen with Ms. Garcia at her apartment there. Ms. Garcia moved to another complex in November 1996. Todd White, the manager of that complex, confirmed that he had identified Defendant from a photo as Ms. Garcia's boyfriend, "Spider." See id., Vol. 7 at 69, 78-79, 117-121.

## II.

Defendant argues that the record contains insufficient evidence to support the jury's guilty verdict. He argued at trial that he was not the individual who sold the drugs involved in this drug trafficking scheme. He contends on appeal that he has been convicted of "guilt by association" merely because he knew co-defendant Mr. Chaldez. Appellant's Br. at 7. He asserts that the only other testimony to his participation in this drug trafficking scheme was that of David Reese and argues that Mr. Reese's testimony was not credible. See id. at 3-9.

When addressing a claim that the evidence is insufficient to support a jury verdict, this court reviews the record de novo and asks only whether "taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in a light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999). While "the evidence supporting

the conviction must be substantial and do more than raise a suspicion of guilt," we have held that "[t]he jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts." United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999) (citation and quotations omitted).

We conclude that a reasonable jury could have found Defendant guilty on the basis of the evidence presented in the record. We agree with Defendant that Mr. Reese's drug use, involvement in the drug trafficking scheme, and testimony pursuant to a plea agreement all raise questions concerning Mr. Reese's credibility. However, the jury was informed of the credibility question. Defendant's counsel strenuously cross-examined Mr. Reese about both his capacity to remember and his motive to testify for the government. See e.g., R., Vol. 6 at 103-112, 118. Jury instructions cautioned the jurors to weigh more carefully the testimony of a drug abuser than that of a non-abuser and the testimony of an alleged accomplice more carefully than the testimony of a witness who has not participated in the commission or a crime. See id., Vol. 4, Doc. 400 at Instructions 46, 47. The court instructed the jurors to determine whether the testimony of an accomplice may have been affected by an agreement he or she may have made with the government. See id. at Instruction 46.

> [T]he assumption that the testimony of an accomplice should seldom, if ever, be believed. . . . [i]s not the law. This is true because [i]t is

the right of the jury to determine the credibility of each witness . . . and a jury may convict based on the uncorroborated testimony of a co-conspirator, so long as the testimony is not incredible on its face and is otherwise capable of establishing guilt beyond a reasonable doubt. We have also stated a conviction based on accomplice testimony may be affirmed if the district court properly instructed the jury that accomplice testimony must be carefully scrutinized, weighed with great care, and received with caution.

United States v. Torres, 53 F.3d 1129, 1140 (10th Cir. 1995) (quotations and citations omitted). The jury obviously found Mr. Reese's testimony, as corroborated by the testimony of other witnesses, credible. We conclude that the evidence was more than sufficient to support the conviction, and "[w]e do not . . . second-guess the jury's credibility determinations, nor do we reassess the jury's conclusions about the weight of the evidence presented." United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997).

III.

Defendant's second challenge is to the district court's exclusion of testimony by his expert witness. Defendant submitted a notice of intent to offer the expert testimony of Kathy M. Verdeal about the effects of methamphetamine on users, presumably to inform the jury of the effect of drugs on the perceptions and memory of those witnesses who were or had been drug abusers. The government filed a motion in limine, seeking to exclude that testimony. After a

hearing on the matter, the district court granted the government's motion. We review the decision to exclude expert testimony for an abuse of discretion. United States v. Call, 129 F.3d 1402, 1405 (10th Cir 1997), cert. denied, 118 S. Ct. 2064 (1998).

The Federal Rules of Evidence state:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. A district court ruling on a proffer of expert testimony must determine whether the expert is proposing to testify to (1) reliable "scientific knowledge" that (2) "will assist the trier of fact to understand or determine a fact in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993); see also United States v. Smith, 156 F.3d 1046, 1052 (10th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999).

The district court expressed some reservations regarding the reliability of the proffered testimony. The court observed that the expert witness's background was primarily as a chemist and toxicologist trained in techniques to determine the presence of toxic substances and chemicals in tissues and fluids. Her vitae did not indicate a focus in her research on the psychological or pharmacological effects of methamphetamine. The court expressed graver doubts concerning the

-8-

relevance and helpfulness of the proffered testimony. Acknowledging that the expert might have read some literature on the effects of controlled substances on memory and perception, the court determined that her presentation would take up a great deal of time and possibly confuse the jury. The expert had no information specific to the witnesses in this case. The court observed that the testimony she would offer regarding lack of sleep and memory loss by drug addicts involved relatively simple matters for the jury to understand. The information could be elicited from the other witnesses. The court concluded that, to the extent it was relevant to facts at issue, expert's other proffered testimony on how methamphetamine is ingested and how it is made also could be elicited from the other witnesses. See R., Vol. 5 at 25-33. Having reviewed the district court's rationale, we conclude that the court did not abuse its discretion. The court could reasonably have determined that the proffered testimony, to the extent it was reliable, would not have assisted the trier of fact.

IV.

Defendant's final challenge is to the district court's determination that the relevant quantity of methamphetamine assignable to him exceeded one kilogram. Defendant first contends that the testimony of witness David Reese on the quantities involved is "devoid of reliability." Appellant's Br. at 9.

We review factual findings regarding drug quantities for clear error.  See United States v. Richards, 27 F.3d 465, 468 (10th Cir. 1994).  This court has previously upheld drug quantity determinations based on the testimony of individuals allegedly of "questionable credibility."  United States v. Dennino, 29 F.3d 572, 578 (10th Cir. 1994); see also Browning, 61 F.3d at 754-55.  We have held findings based on their testimony clearly erroneous only in those cases where the findings have lacked "minimum indicia of reliability."  See, e.g., Richards, 27 F.3d at 469-70 (holding that witness's testimony was "extremely vague," "flatly contradictory," and based solely on government guesswork); cf. United States v. Robinson, 904 F.2d 365, 372 (6th Cir. 1990) (concluding that witness was pressured into fixing quantities that were "totally a guess").

In this case, the district court, based on its observations, stated that Mr. Reese, the government's principal witness, "possesses substantial ability and intelligence. . . . [and] is well able to organize his thoughts."  R., Vol. 11 at 28.  The court found that Mr. Reese's testimony was internally consistent and was corroborated by the accounts of several witnesses.  Id. at 29-33.  Among the witnesses were two police officers who substantiated certain details of Mr. Reese's testimony regarding two different trips between Evanston and Salt Lake City.  Id. at 29-30.  The court noted that other witnesses, including Ms. Henderson, Mr. Piper, and Ms. Boyle, provided further testimony consistent with

Mr. Reese's. Id. at 29-33. Based on these observations and on the underlying record, we hold that the district court did not clearly err in determining that Mr. Reese's testimony was credible and in relying on that testimony in calculating the quantities of drugs attributable to Defendant.

Defendant also argues that the district court erred in its estimation and calculation of the relevant drug quantities. Drug quantities attributable to a defendant convicted of a conspiracy are established "on the basis of the quantity of drugs which [the defendant] reasonably foresaw or which fell within 'the scope' [of the defendant's] agreement with the conspirators." United States v. Roberts, 14 F.3d 502, 522 (10th Cir. 1993) (citations, quotations, and emphasis omitted). For sentencing purposes, the government bears the burden of proving the quantity of drugs by a preponderance of the evidence. United States v. Hooks, 65 F.3d 850, 854 (10th Cir. 1995). The district court may estimate the quantity provided the information underlying its estimate has "minimum indicia of reliability." United States v. Browning, 61 F.3d 752, 754 (10th Cir. 1995). We review "the district court's factual findings regarding the quantity of drugs for which a defendant [should be] held responsible for clear error." Hooks, 65 F.3d at 854; see also United States v. Johnston, 146 F.3d 785, 795 (10th Cir. 1998), cert. denied, 119 S. Ct. 839 (1999).

Based on its assessment of the evidence offered by Mr. Reese and the other

witnesses, the district court found that the government had shown by a preponderance of the evidence that the quantity of methamphetamine attributable to Defendant exceeded one kilogram. Mr. Reese testified that Mr. Schram received a one-ounce quantity from Defendant at their initial meeting. Mr. Reese also stated that he received from Defendant both a one-pound chunk of methamphetamine in September or October and the four-and-one-eighth-ounce quantity obtained during his arrest. Furthermore, Mr. Reese testified to a series of purchases from Defendant on a bi-weekly or more frequent basis between March and December 1996. These transactions involved one-half to six-ounce quantities from March through September or October and four- to six-ounce quantities from then until December. Based on this testimony, the court could easily have attributed to Defendant quantities of methamphetamine totaling one kilogram of more. Having reviewed the testimony, we hold that the district court did not err in its factual findings regarding the quantity of methamphetamine for which Defendant should be held responsible.

AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge