**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 11 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee/Cross-
        Appellant,

v.

CHARLES WILLIAM HOPKINS,

        Defendant-Appellant/
        Cross-Appellee.

Nos. 02-3373 and 02-3383

(D. of Kan.)

(D.C. No. 00-CR-40024-06-SAC)

### ORDER AND JUDGMENT [*]

Before **EBEL**, **BRISCOE**, and **TYMKOVICH**, Circuit Judges.

A federal jury in Kansas convicted Charles Williams Hopkins for his role in a tri-state conspiracy to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846. The district court subsequently sentenced Hopkins to a 121-month prison term.

On appeal, Hopkins argues that the district court erred in its sentencing determinations under the United States Sentencing Guidelines (USSG or

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders; nevertheless, an order may be cited under the terms and conditions of 10th Cir. R. 36.3.

Guidelines). First, he claims that the court improperly enhanced his sentence for possession of a dangerous weapon and obstruction of justice. Second, he contends that the district court erred in calculating his sentence based on a quantity of drugs in excess of that determined by the jury. *See Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington,* 124 S. Ct. 2531 (2004); *United States v. Booker*, 125 S. Ct. 738 (2005). On cross-appeal, the government also challenges the sentence, claiming that the district court misapplied the Guidelines by undercounting the quantity of drugs for which it held Hopkins accountable, and thus sentenced Hopkins at a lower range than the Guidelines required.

Exercising jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we find the district court erred in its sentencing determination. We remand for resentencing consistent with the Supreme Court's recent decision in *Booker*, 125 S. Ct. 738.

**BACKGROUND**

In late 1998 and early 1999, state and federal agents identified Hopkins's co-defendant, Shane Wright, as a manufacturer and distributor of high-grade methamphetamine. Wright was part of a large scale drug trafficking organization operating in the tri-state area of southeast Kansas, southwest Missouri, and northeast Oklahoma. Hopkins's role in the conspiracy consisted of providing

-2-

precision lab equipment and chemicals to Wright. In exchange, Hopkins received drugs for personal use.

On January 26, 2000, police arrested Wright and Hopkins's brother near Springfield, Missouri. Hearing of the arrests, Hopkins went to Wright's home that evening and removed several guns and PVC pipes. Hopkins believed the pipes to contain money or drugs. He subsequently buried the pipes but returned the guns to Wright. Though police never recovered the pipes, co-defendant Tracey Wright later testified at trial that they contained chemicals used in the production of methamphetamine.

Following his arrest in March 2000, a 77-count superseding indictment charged Hopkins along with 24 co-defendants. Three counts pertained to Hopkins's role in the conspiracy. Count 1 alleged a conspiracy to manufacture and distribute methamphetamine beginning sometime prior to October 29, 1998, and continuing until March 2000, in violation of 21 U.S.C. § 846. Two other counts charged Hopkins with using a communication facility to cause or facilitate the conspiracy offense, in violation of 21 U.S.C. § 843(b).

The jury convicted Hopkins on the conspiracy count, but acquitted him of the remaining two counts. In anticipation of sentencing, a probation officer conducted an investigation and prepared a Presentence Investigation Report (PSR). The PSR calculated Hopkins's recommended sentence as follows: (1) a

base offense level of 38 for being responsible for the manufacture of three or more kilograms of actual methamphetamine, USSG § 2D1.1(c)(1) (1998); (2) adjusted upward two levels for possession of a firearm in connection with the conspiracy, USSG § 2D1.1(b)(1); and (3) adjusted upward two levels for obstruction of justice for his removal of evidence from Wright's house, USSG § 3C1.1. This calculation yielded a total offense level of 42, criminal history category I, for a sentencing range of 360 months to life imprisonment. Since the jury determined the actual drug quantities attributable to Hopkins to be less than 50 grams,[1] however, the statutory maximum for the offense of conviction as provided by 21 U.S.C. § 841(b)(1)(C) was 240 months. The PSR recommended the statutory maximum since that sentence would still be less than the Guidelines' minimum.

The district court did not follow the drug quantity calculation in the PSR. Instead, the court found Hopkins responsible for 21 of grams of a methamphetamine mixture he received in exchange for drug-making chemicals and equipment, plus one additional ounce of actual methamphetamine attributable to the conspiracy. These quantities translated to a base offense level of 26. The court added the two level enhancements for possession of a dangerous weapon

---

[1] In response to special interrogatories on the verdict form, the jury found that Hopkins had conspired to manufacture or distribute less than 50 grams of methamphetamine.

and obstruction of justice for a total offense level of 30, resulting in a sentencing range of 97-121 months. The court sentenced Hopkins to the top of the range, 121 months imprisonment.

## DISCUSSION

Hopkins argues that the district court committed three discrete errors in determining his sentence. First, he argues the government failed to submit adequate proof to support the sentence enhancements. Second, he relies on *Blakely v. Washington*, 124 S. Ct. 2531 (2004), to argue his sentence violates his constitutional rights because the quantity of drugs attributed to him for sentencing purposes exceeded the amount determined by the jury. Finally, he claims the district court further erred under *Blakely* when it imposed the two enhancements based on facts neither determined by the jury nor admitted by him.[2]

The crux of the cross appeal is the methodology used by the district court to determine drug quantities attributable to Hopkins. The government asserts the district court erred in employing a methodology to determine drug quantities that

---

[2]After oral argument in this case, the Supreme Court held the constitutional rule articulated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely* applied to the Guidelines. *See United States v. Booker*, 125 S. Ct. 738, 755–56 (2005). To remedy the constitutional infirmity created by using judge-found facts to enhance prison sentences, the Court severed the portion of the Guidelines that made their application mandatory. *See id.* at 756.

not only violated the Guidelines but was not supported by substantial evidence in the record.

We agree with the government that the district court employed an improper methodology in determining drug quantity and, further, that the drug quantity determination in this case is not supported by the record.

I.

This court reviews a district court's legal interpretation of the Guidelines de novo. *See United States v. Johnson*, 42 F.3d 1312, 1320 (10th Cir. 1994). Factual findings with regard to drug quantities are reviewed for clear error and are reversed "only if the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *United States v. Ryan*, 236 F.3d 1268, 1273 (10th Cir. 2001) (quotation marks and citation omitted).

II.

Our review starts with the PSR, which correctly identified the Guidelines' provisions for determining Hopkins's base offense level, USSG § 2D1.1. The offense level in turn is linked to the quantity of drugs attributable to the defendant. As with any drug conspiracy, the quantities attributable to Hopkins are those amounts that both result from activities by defendant and his co-conspirators "in furtherance of the jointly undertaken" conspiracy and are

"reasonably foreseeable in connection with" the conspiracy. *See* USSG § 1B1.3,

comment. n. 2; *United States v. Green*, 175 F.3d 822, 837 (10th Cir. 1999). In

deciding the drug amounts attributable to a defendant in a conspiracy case, the

sentencing court must "analyze, and make particularized findings about, the scope

of the specific agreement the individual defendant joined in relation to the

conspiracy as a whole." *United States v. Melton*, 131 F.3d 1400, 1404 (10th Cir.

1997) (quotation marks and citations omitted). While the court to some extent

may "rely upon an estimate to establish the defendant's guideline offense level,"

*United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996), the "need to

estimate drug quantities at times is not a license to calculate drug quantities by

guesswork." *United States v. Richards*, 27 F.3d 465, 469 (10th Cir. 1994)

(quotation marks and citations omitted).

Applying the Guidelines' provisions, the PSR recommended that Hopkins

should be held accountable for 7.25 kilograms of actual methamphetamine. This

amount represented an estimate of the reasonably foreseeable amount of

methamphetamine that Shane Wright produced between (1) the date of his arrest

in January 2000, *i.e.*, the date on which Hopkins furthered the conspiracy by

removing guns and pipes from the Wright home, and (2) the date on which

Hopkins and his co-conspirators were arrested in March 2000. The PSR,

however, concluded that Hopkins was not responsible for any of the drugs produced by the conspiracy prior to the January 2000 concealment of evidence.

Hopkins objected to the PSR's quantity calculation prior to sentencing. He argued that he should be held accountable for no more than the amount determined by the jury. In his written response to Hopkins's objections, the probation officer responsible for preparing the PSR further explained the reasons for the PSR's quantity determination, namely: (1) there was substantial evidence that Wright produced two pounds of methamphetamine per week and the officer believed this level of production continued subsequent to Wright's January 2000 arrest, and (2) since the PSR held Hopkins accountable for only those drugs produced *after* January 2000, the quantity determination was "a conservative estimate, and errs on the side of the defendant."

The district court reviewed the evidence of drug quantities and Hopkins's role in the conspiracy and made a series of findings for purposes of sentencing. Rejecting the PSR's quantification, the court instead determined that Hopkins was responsible for 21 grams of a methamphetamine mixture (received for his personal use) plus an additional "one ounce of actual methamphetamine." The latter amount represented the court's "proportionate estimate of the defendant's efforts at preserving the conspiracy" on the night in which he removed guns and pipes from the Wright home.

The court went on to explain its proportionality analysis. In its view, Hopkins's role was minimal:

> The more credible evidence at trial establishes that Hopkins' efforts that night and next day were quite limited at best and that after his arrest Shane Wright did not continue manufacturing methamphetamine at the same or similar levels as before the arrest. Combining Hopkins's limited role and Wright's curtailed manufacturing, the court concludes the defendant should be held accountable for one ounce of actual methamphetamine, that is, the court's proportionate estimate of the defendant's efforts at preserving the conspiracy to manufacture methamphetamine.

The court, however, did not explain what it meant by a "proportionate estimate" of Hopkins's involvement in the conspiracy. In fact, it conceded that the drug quantity was a guess extrapolated from the court's understanding of the entire amount of methamphetamine produced by the conspiracy discounted by Hopkins's role:

> In the court's judgment, it seems both unreasonable and unfair in light of the evidence at trial and the jury's verdict to hold the defendant accountable for the large sums of methamphetamine manufactured by Shane Wright's extensive manufacturing conspiracy. By calculating and estimating relevant conduct as it has, the court has attempted to preserve at least the spirit of the jury's verdict with respect to the amount of methamphetamine mixture and to hold the defendant accountable for his conduct [in removing items from the Wright home], with respect to the estimated amount of actual methamphetamine.

This assessment misses the mark under the Guidelines and our case law in two regards. First, while the court was understandably concerned about the relationship between the amounts found by the jury and those contained in the

PSR, the court's use of a "proportionality" analysis mixes up Hopkins's relative role in the overall conspiracy with the consequences that flowed from his conduct that helped sustain the conspiracy after January 2000. We do not mean to imply that consideration of Hopkins's contributory role as a factor at sentencing is improper. An analysis of such conduct may well affect the court's determination of the scope of Hopkins's involvement in the conspiracy or may lead the court to find the sentence should be reduced based on the mitigating role reductions contained in USSG § 3B1.2. It may also be that Hopkins's conduct dictates a drug quantity determination lower than the entire production between January and March 2000. Our point is, rather, a finding by the court that Hopkins's role in the conspiracy was relatively small does not excuse it from making the relevant conduct inquiries.

Second, even if we were to sanction the use of proportional involvement analysis, there is nothing in the record indicating how the court determined that Hopkins's role in preserving the conspiracy properly resulted in him being held accountable for one ounce of methamphetamine. The district court provides no quantifiable guidance, such as an estimate of the amount of drugs produced after January 2000, to which we can tether our review. Because we do not know how the court arrived at this number, we conclude that there is insufficient evidence in the record to support the drug quantity determination. *See United States v.*

*Richards*, 27 F.3d 465, 469 (10th Cir. 1994) (holding insufficient minimally reliable evidence in the record to support drug quantity determination).

We therefore remand for resentencing.

III.

Having found the district court erred in attributing to Hopkins one ounce of methamphetamine based on his "proportional involvement" in preserving the conspiracy, we need not address the government's other arguments. Similarly, we need not address Hopkins's allegations that the government submitted insufficient evidence to support the sentencing enhancements,[3] nor his Sixth Amendment arguments regarding the judge's role in determining the facts on which the sentence was based.[4]

On remand, resentencing will be governed by the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005). After *Booker*, courts are no longer constrained by the mandatory application of the Guidelines. Nonetheless, a sentencing court is required to "consult" the Guidelines and the factors set forth in 18 U.S.C. § 3553(a) before imposing a sentence. *See Booker*,

---

[3] On remand the district court should consider these claims.

[4] Our case law has applied plain error review to sentences imposed under the Guidelines prior to *United States v. Booker*, 125 S. Ct. 738 (2005). We need not consider the constitutional dimensions of the sentence in this case since we are remanding for resentencing under the post-*Booker* discretionary regime.

125 S. Ct. at 764–67. Consistent with the *Booker* remedial scheme, the sentencing court as fact finder should calculate the range prescribed by the Guidelines. The court then must review the other relevant factors contained in the Guidelines, including those in § 3553(a), and impose a reasonable sentence. *See id.*[5] In applying the Guidelines' factors, the court should take care to explain its reasoning, *see* 18 U.S.C. § 3553(c), especially if it imposes a sentence outside the Guidelines' range. While the Guidelines are no longer mandatory, it is clear from *Booker*, 125 S. Ct. at 757, that the now-discretionary Guidelines will be a vital barometer of reasonableness on appellate review.

## CONCLUSION

We remand to the district court with instructions to resentence Hopkins.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

---

[5] We decline to review the sentence imposed on Hopkins for reasonableness because of the inadequacy of the record discussed above.